■ CFSC CAPITAL CORP. XXVII, Appellant, v W.J. BACHMAN MECHANICAL SHEET METAL CO., INC., et al., Defendants, and BANDE REALTY CO., INC., et al., Respondents. [669 NYS2d 329] —In an action to foreclose five mortgages, the plaintiff appeals, as limited by its notices of appeal and brief, from so much of (1) an order of the Supreme Court, Nassau County (Roberto, J.), entered November 25, 1996, as denied its motion for summary judgment and to dismiss or sever the counterclaims of the defendants Bande Realty Co., WEJW, Inc., Busy Bee Compartment Store of Massapequa, Inc., Busy Bee Merchants Market of Massapequa, Inc., Bay Harbor Associates, L.P., Rochester Associates, L.P., Verleye & Jericho Associates, J. P., and Riverwood Laplace Associates, L. L. C., and (2) an order of the same court, entered March 28, 1997, as, upon reargument, adhered to the prior determination.

Ordered that the appeal from the order entered November 25, 1996, is dismissed, as that order was superseded by the order entered March 28, 1997, made upon reargument; and it is further,

Ordered that the order entered March 28, 1997, is reversed insofar as appealed from, on the law, the motion for summary judgment and to dismiss the counterclaims asserted by the Bande Realty Co., WEJW, Inc., Busy Bee Compartment Store of Massapequa, Inc., Busy Bee Merchants Market of Massapequa, Inc., Bay Harbor Associates, L.P., Rochester Associates, L.P., Verleye & Jericho Associates, J. P., and Riverwood Laplace Associates, L. L. C., is granted; and it is further,

Ordered that the appellant is awarded one bill of costs.

In December 1993 Cargill Financial Services Corporation (hereinafter Cargill) loaned $58,000,000 to the respondents, Busy Bee Associates, Bay Harbour Associates, Huntington Square Associates, Verleye & Jericho Associates, and Rochester Associates (hereinafter the mortgagors), entities controlled by Wilbur Breslin. The loan was secured by, *inter alia,* five separate mortgages on properties owned by the mortgagors. The mortgagors anticipated repaying the loan from the proceeds of a public offering of shares of a Real Estate Investment Trust (hereinafter REIT). The public offering, however, never took place.

Following defaults under the mortgages, Cargill, the mortgagors, and Breslin entered into a Forebearance Agreement on October 26, 1994. Breslin and the mortgagors engaged in negotiations with General Electric Investment Corp. (hereinafter GEIC) in an attempt to refinance the debt. Those efforts were also ultimately unsuccessful.

In September 1995 the mortgagors defaulted in the payment of interest. The mortgages were subsequently assigned to the plaintiff, an entity affiliated with Cargill, which commenced this foreclosure action. In their answer, the mortgagors and affiliated respondents interposed eleven affirmative defenses, four of which were also asserted as counterclaims. The plaintiff moved for summary judgment and to dismiss or sever the counterclaims, and the Supreme Court granted the motion only to the extent of dismissing the mortgagors' fifth affirmative defense, which was that the complaint failed to state a cause of action. We conclude that the mortgagors and their affiliates failed to raise any issue of fact regarding the remainder of their affirmative defenses and counterclaims and, therefore, the plaintiff is entitled to summary judgment and the dismissal of the counterclaims.

Essentially, the mortgagors and their affiliates contend that their default resulted from Cargill's conduct, which delayed finalizing of the REIT until there was no longer a viable market for the offering, interfered with their attempts to refinance, and caused deterioration and waste of the mortgaged premises. In their first affirmative defense and counterclaim, they alleged that Cargill interfered with a refinancing agreement that had been reached with GEIC. There is, however, no evidence of an existing enforceable contract, a necessary element of a cause of action for intentional interference with contractual relations (*see, NBT Bancorp v Fleet/Norstar Fin. Group,* 87 NY2d 614, 621). Although not pleaded in their answer, the mortgagors and their affiliates argued in opposition to the plaintiff's motion that they had a viable cause of action for interference with prospective contractual relations, but they failed to come forward with any evidence demonstrating that Cargill acted with the sole purpose of harming them, or employed means that were unlawful or improper (*see, NBT Bancorp v Fleet/ Norstar Fin. Group, supra,* at 621; *Nassau Diagnostic Imaging & Radiation Oncology Assocs. v Winthrop-University Hosp.,* 197 AD2d 563, 564).

The second affirmative defense and counterclaim to recover damages for breach of fiduciary duty must also be dismissed, as the mortgagors and their affiliates failed to demonstrate the existence of any fiduciary relationship with Cargill. The facts as alleged do not suggest that Breslin, a sophisticated businessman, reposed his trust and confidence in the integrity and fidelity of Cargill or that Cargill exercised such control over the mortgaged premises or the mortgagors as might give rise to a fiduciary relationship (*see, Chester Color Separations v Trefoil Capital Corp.,* 222 AD2d 276). Further, the loan documents themselves specifically refute both the existence of any relationship of trust between the parties and the claim that Cargill controlled the mortgaged premises.

In their third affirmative defense and counterclaim for a declaratory judgment, the mortgagors and their affiliates seek a declaration that the loan documents are void and unenforceable. They have not, however, raised any question of fact regarding the validity of the mortgages, which the mortgagors acknowledged to be valid and binding obligations in the Forebearance Agreement they executed.

As to the fourth affirmative defense and counterclaim to recover damages for negligence, the mortgagors and their affiliates failed to demonstrate the existence of any duty on the part of Cargill created by virtue of its alleged control over the

proposed REIT offering, the mortgages, and the mortgaged premises, nor have they demonstrated the breach of any such duty.

The sixth through ninth affirmative defenses alleging estoppel must also be dismissed as they are based on the same allegations underlying their first four defenses and counterclaims. Finally, to the extent the tenth and eleventh affirmative defenses may be construed as pleading the doctrine of unclean hands, the mortgagors and their affiliates have failed to come forward with evidence demonstrating that Cargill's conduct was immoral or unconscionable (*see, Connecticut Natl. Bank v Peach Lake Plaza,* 204 AD2d 909, 911). Mangano, P. J., Joy, Altman and Luciano, JJ., concur.