Peter HALL and Big Bad Productions, Inc., Plaintiffs–Appellants,

v.

EARTHLINK NETWORK, INC., Defendant–Appellee.

Docket No. 04–0384–CV.

United States Court of Appeals, Second Circuit.

Argued: Sept. 30, 2004.

Decided: Jan. 25, 2005.

Andrew Grosso, Andrew Grosso & Associates, Washington D.C., (William M. Palmer, Boston, MA, on the brief), for Plaintiffs–Appellants.

John M. Bradham, Duval & Stachenfeld LLP (Kirk L. Brett and Allan N. Taffet on the brief), New York, NY, for Defendant–Appellee.

Before: STRAUB, POOLER, and WESLEY, Circuit Judges.

POOLER, Circuit Judge:

Plaintiffs-appellants Peter Hall and Big Bad Productions, Inc. (collectively "Hall") appeal from a final judgment and order of the United States District Court for the Southern District of New York (Richard Owen, *Judge* ), entered December 30, 2003 dismissing all of Hall's claims by summary judgment. For the reasons specified below, we affirm the district court's dismissal of Hall's Electronic Communications Privacy Act, breach of contract, breach of the implied covenant of good faith and fair dealing, and tort claims.

## BACKGROUND

Peter Hall, a self-employed independent film producer, wrote and filmed his first movie, entitled *Delinquent,* from 1992 to 1999. Hall marketed *Delinquent* through his corporation, Big Bad Productions Incorporated. In July 1996, Hall opened an account with EarthLink Network Incorporated ("EarthLink"), an Internet Service Provider ("ISP"), for Internet services and personal use of e-mail. Hall claims that he was known in the independent film community by his EarthLink e-mail username, lot99@earthlink.net ("lot99"). When Hall signed up for the EarthLink account, he agreed to EarthLink's subscriber agreement ("contract") which stipulated that California law governed the contract.

*Delinquent* was scheduled to premiere on September 12, 1997, in New York City and Los Angeles. According to the complaint, Hall planned to use his EarthLink lot99 e-mail account to promote the two September 12, 1997, premieres at the upcoming Chicago Underground Film Festival on August 13, 1997. On August 5, 1997, UUNet, which provided "backbone" Internet services to EarthLink informed EarthLink that lot99 was sending mass junk e-mail, or "spam." EarthLink immediately terminated Hall's access to the lot99 e-mail account and placed the lot99 e-mail address on "Net Abuse Report," a web list of e-mail abusers. *Hall v. Earthlink Network, Inc.,* 2003 WL 22990064, at * 1 (S.D.N.Y. Dec.19, 2003). Six days later, on August 11, 1997, after a series of exchanges between EarthLink, Hall, and Wired News (an Internet industry magazine), EarthLink determined that lot99 was not a source of spam. EarthLink posted a retraction on the Net Abuse Report website and sent sixteen lot99 e-mails to Hall's new non-EarthLink e-mail account. Hall claims that he requested that EarthLink turn his service back on but

that EarthLink failed to do so. EarthLink claims that Hall, "with shouted obscenities," refused its offers to reconnect the account. Hall's EarthLink account was not reopened, and between mid-August 1997 and July 1998, EarthLink received and stored 591 e-mails sent to the lot99 address. In July 1998, EarthLink sent the 591 stored e-mails to Hall.

On July 31, 1998, Hall filed a complaint in district court. The complaint included claims for a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ("ECPA"), breach of contract, libel, breach of the covenant of good faith and fair dealing, negligent appropriation of electronic communication, intentional interference with electronic communication, and prima facie tort. Following discovery, EarthLink moved for summary judgment.

Hall's ECPA claim was that EarthLink "illegally intercepted" his e-mail in violation of 18 U.S.C. § 2511(1)(a) by intentionally continuing to receive messages sent to lot99 after the termination of his account. The district court dismissed this claim, reasoning that EarthLink's acts did not constitute an "intentional interception" under ECPA. *Hall,* 2003 WL 22990064, at * 2. Hall also claimed that EarthLink's sudden termination of his access to the Internet and to his e-mail breached his contract with the ISP. EarthLink's actions, Hall alleged, made it impossible for him to adequately advertise *Delinquent* in time for the Chicago Underground Film Festival and to respond to inquiries about his upcoming premieres. Hall claimed that *Delinquent* did not receive the publicity that it would have received had he not lost his Internet service.

The district court did not reach the issue of whether or not the contract was breached because it (1) found that consequential damages stemming from Hall's lost busi-

ness opportunities were too speculative and therefore dismissed Hall's claim for consequential damages; (2) held that without consequential damages, Hall's actual damages claim—for stationery, Internet service, and telephone calls—could not meet the jurisdictional amount for diversity jurisdiction, $75,000, *see* 28 U.S.C. § 1332(a); and (3) therefore dismissed the claim in its entirety. *Hall,* 2003 WL 22990064, at * 2–3. The district court also dismissed Hall's claims for breach of the implied covenant of good faith and fair dealing, prima facie tort, libel, negligent appropriation of electronic communication, and intentional interference with electronic communication. *Id.* at * 3. On appeal, Hall contends that each of these dismissals, except the dismissal of the libel and prima facie tort claims, was error. While we disagree with the district court's reasoning in part, we affirm the district court's dismissal of all of these claims.

## DISCUSSION

### I. *Electronic Communications Privacy Act*

We review the district court's summary judgment dismissal of Hall's ECPA claim de novo. *Perry v. Dowling,* 95 F.3d 231, 235 (2d Cir.1996). We agree with the district court's conclusion that EarthLink did not violate 18 U.S.C. § 2511(1)(a) but write to further clarify the proper interpretation of this section.

Through the enactment of ECPA, Congress amended the Federal wiretap law in order to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." Sen. Rep. No. 99–541, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3555. ECPA is

divided into Title I, which governs unauthorized interception of electronic communications, 18 U.S.C. §§ 2510–2522, and Title II, which governs unauthorized access to stored communications, 18 U.S.C. §§ 2701–2711. *Organizacion JD LTDA. v. United States Dep't of Justice,* 124 F.3d 354, 356 (2d Cir.1997). This appeal concerns Title I exclusively.

■ Section 2511(1)(a) states that, except as otherwise provided, anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any … electronic communication" violates ECPA. 18 U.S.C. § 2511(1)(a). The district court held that EarthLink did not "intentionally intercept anything" in violation of Section 2511(1)(a) because EarthLink "merely received and stored e-mails precisely where they were sent-to an address on the EarthLink system." *Hall,* 2003 WL 22990064, at * 2. The district court did not specify whether it based this holding on a determination that EarthLink's actions were not an interception, not intentional, or both. We hold that EarthLink's continued reception of e-mails sent to lot99 did not constitute an "interception" under ECPA because it was conducted as part of the "ordinary course of [EarthLink's] business." *See* 18 U.S.C. § 2510(5)(a). Because we hold that EarthLink did not intercept electronic communications in violation of ECPA, we do not need to decide whether EarthLink's acts were intentional.

*EarthLink's act did not constitute an interception*

ECPA defines the term "intercept" as "the aural or other acquisition of the contents of any … electronic … communication[1] through the use of *any electronic,*

---

**1.** An "electronic communication" is defined as:

*mechanical, or other device.*" 18 U.S.C. § 2510(4) (emphasis added). ECPA provides an ordinary course of business exception applicable to this case within its definition of "any electronic, mechanical, or other device." 18 U.S.C. § 2510(5)(a). "[A]ny telephone or telegraph instrument, equipment or facility, or any component thereof ... being used by a provider of wire or electronic communication service in the ordinary course of its business" is not an electronic, mechanical, or other device, and therefore does not fall under the definition of "intercept." *Id.* EarthLink acquired the contents of electronic communications but did so in the ordinary course of business and thus did not use "any electronic, mechanical, or other device" as defined by the statute.

Hall reads Section 2510(5)(a)'s ordinary course of business exception to apply only to an ISP [2] that uses *telephone* or *telegraph* instruments, equipment or facilities. Appellants' Reply Br. at 10 n. 6. Earth-Link interprets the language to include ISPs that use any telephone or telegraph instrument *or* any equipment or facility. To resolve this issue, we look first to the plain language of Section 2510(5)(a). *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 290 (2d Cir.2002). The placement of the commas could suggest that the phrase "telephone or telegraph" modifies "instru-

ment," "equipment," and "facility." According to this reading, the ordinary course of business exception would apply only to an ISP using a telephone or telegraph. On the other hand, the placement of the commas could suggest that "telephone or telegraph" only modifies "instrument." Accordingly, the ordinary course of business exception would also apply to an ISP using any equipment or facility. *See generally United States v. Aguilar,* 515 U.S. 593, 602–03, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995).

Because the plain language of Section 2510(5)(a) is arguably ambiguous and we do not find guidance from the statutory structure, we may look to the legislative history to clarify Congressional intent. *See Natural Res. Def. Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir.2001). The legislative history demonstrates that Congress intended to apply Section 2510(5)(a)'s ordinary course of business exception to ISPs. To understand Congress' intent it is important to note that Internet technology has advanced significantly since Congress enacted ECPA in 1986. *See United States v. Steiger,* 318 F.3d 1039, 1047 (11th Cir.), *cert. denied,* 538 U.S. 1051, 123 S.Ct. 2120, 155 L.Ed.2d 1095 (2003); *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 874 (9th Cir.2002). At the time ECPA was enacted in 1986, ISPs

any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce ...

18 U.S.C. § 2510(12). EarthLink argues that communication over the Internet can only be electronic communication while it is in transit, not while it is in electronic storage. EarthLink also contends that an "interception" can only occur when messages are in transit. These arguments lack merit because, unlike the line of cases EarthLink relies on, this case involves the *continued receipt* of e-mail messages rather than the acquisition of

*previously stored* electronic communication. *See Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 110 (3d Cir.2003, as amended by order filed Jan. 20, 2004); *United States v. Steiger,* 318 F.3d 1039, 1048–49 (11th Cir.), *cert. denied,* 538 U.S. 1051, 123 S.Ct. 2120, 155 L.Ed.2d 1095 (2003); *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 873, 876–79 (9th Cir.2002); *Steve Jackson Games, Inc. v. United States Secret Serv.,* 36 F.3d 457, 460–64 (5th Cir.1994).

**2.** It is not disputed that ISPs are a type of electronic communication service provider.

directed e-mail over telephone wires and were therefore included in the ordinary course of business exception. The Senate Report stated that "[e]lectronic mail is a form of communication by which private correspondence is transmitted *over public and private telephone lines.*" Sen. Rep. No. 99–541 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3562 (emphasis added). Congress' use of the term "telephone" was thus understood to include the instruments, equipment and facilities that ISPs use to transmit e-mail. Therefore, under both of the parties' interpretations, ISPs are included in Section 2510(5)(a)'s ordinary course of business exception.

Moreover, an interpretation that excludes ISPs from the ordinary course of business exception should be avoided because it would lead to an absurd result. *See American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible."). If ISPs were not covered by the ordinary course of business exception, ISPs would constantly be intercepting communications under ECPA because their basic services involve the "acquisition of the contents" of electronic communication. *See* 18 U.S.C. § 2510(4). Congress could not have intended this absurd result. *Cf. Ehrlich v. American Airlines, Inc.,* 360 F.3d 366, 385–86 (2d Cir.2004). Thus, we hold that ISPs do not "intercept" if they are acting within the ordinary course of their businesses.

We must next determine, therefore, if there is a material issue of fact as to whether or not EarthLink was acting within the ordinary course of business when it continued to receive messages sent to lot99. EarthLink argues that it used its routers, servers and other computer equipment as part of its e-mail service to all customers, including Hall, in the ordinary course of its business. Appellee's Br. at 27. Hall asserts that "intentionally seizing e-mail of someone who is no longer a customer" is not within any ISP's ordinary course of business. Appellants' Reply Br. at 11. Hall, however, does not provide evidence to establish that EarthLink's actions were not part of its ordinary course of business. Hall presented evidence that his investigator sent an e-mail message to a fictitious EarthLink address, blot101@earthlink.net, and the message bounced back. This evidence, however, is not relevant to the ordinary course of business determination because the message was not sent to an e-mail address, such as lot99, that at one time existed on EarthLink's system. EarthLink, on the other hand, provided testimony that it was its practice at the time to continue to receive and store e-mails on the server's mail file after any account was cancelled. Moreover, EarthLink presented testimony that, at the time relevant to this action, it did not have the ability to bounce e-mail back to senders after the termination of an account. Because there is no evidence on the record that EarthLink was not acting within the ordinary course of its business, there is no material issue of fact and summary judgment was appropriate.

## II. *Breach of contract*

We review the district court's summary judgment dismissal of Hall's breach of contract claims de novo. *Lucente v. International Bus. Machs. Corp.,* 310 F.3d 243, 253 (2d Cir.2002). Hall essentially requested two forms of relief for breach of contract: consequential damages and actual damages. We agree with the district court's dismissal of Hall's consequential damages. The district court's subsequent dismissal of Hall's actual damages claim for lack of jurisdiction, however, was improper because the court should not have

considered a post-filing event to recalculate the amount in controversy. Nonetheless, for the reasons stated below, we affirm the dismissal of the actual damages claim.

### A. Consequential damages

■ Hall claimed consequential damages for damage to his career and business opportunities ("lost profits") due to the failure of *Delinquent.* With respect to this claim, the district court granted summary judgment, holding that "lost profits of this nature are entirely too speculative to support Hall's breach of contract claim." *Hall,* 2003 WL 22990064, at * 2. After reviewing the record and relevant case law, we agree.

■ Under California law, an unestablished business can receive "anticipated profits dependent upon future events ... where their nature and occurrence can be shown by evidence of reasonable reliability." *Grupe v. Glick,* 26 Cal.2d 680, 160 P.2d 832, 840 (1945). Hall, however, did not present any evidence of reasonable reliability through "expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like." [3] *Kids' Universe v. In2Labs,* 95 Cal.App.4th 870, 116 Cal.Rptr.2d 158, 169 (2002) (quoting Restatement (Second) of Contracts § 352 cmt. b); *see also Resort Video, Ltd. v. Laser Video, Inc.,* 35 Cal.App.4th 1679, 42 Cal.Rptr.2d 136, 146–47 (1995); *A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 186 Cal.Rptr. 114, 126–27 (1982). Ac-

cordingly, summary judgment dismissal of Hall's consequential damages was appropriate.

### B. Actual damages

■ After dismissing the consequential damages on summary judgment, the district court dismissed Hall's actual damages claim for want of subject matter jurisdiction, stating:

> all that is now left before me are claims that encompass [Hall's] alleged actual losses, such as telephone calls, stationery, and costs for securing a new internet provider. The amount in controversy obviously falls well below the $75,000 threshold for diversity jurisdiction, and there is no longer a federal question since the ECPA claim was dismissed. Accordingly, there is no basis for federal jurisdiction over Hall's claims and this action is dismissed with prejudice.

*Hall,* 2003 WL 22990064, at * 3. The district court should not have considered a post-filing event in its calculation of the amount in controversy and therefore should not have dismissed the actual damages claim on jurisdictional grounds. Generally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289–90, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."); *Wolde–Meskel v. Vocational In-*

---

**3.** Three weeks after oral argument, Appellants moved to supplement the record on appeal with their "Answers to Defendant's First Request for Production of Documents." The motion was purportedly made in response to Appellee's representation at oral argument that "Appellants had not produced any documentation during discovery supporting their assertion that their film, *Delinquent,* cost

$380,000 to produce." In the interest of completeness, we grant the motion, but admonish Appellants that their motion was inexcusably tardy, and addresses an issue that was clearly raised both in the district court and in this court well before oral argument. In any event, the discovery documents do not change the resolution of Appellants' claims.

*struction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62–63 (2d Cir.1999). In a case like the one before us, where the amount necessary for diversity jurisdiction, *see* 28 U.S.C. § 1332(a), rests on the aggregation of state law claims, a summary judgment dismissing one or more aggregated claims does not defeat jurisdiction even when it reduces the amount in controversy to below the jurisdictional threshold. *See Wolde–Meskel*, 166 F.3d at 63–65.[4]

■ There are a few occasions when we will look to post-filing events in evaluating the amount in controversy for jurisdictional purposes. We will do so when post-filing events suggest that the amount in controversy allegation in the complaint was made in bad faith. *See Wolde–Meskel*, 166 F.3d at 63. No evidence was adduced during discovery that suggests that Hall's amount in controversy pleading in the complaint was made in bad faith. *Tongkook America, Inc. v. Shipton Sportswear Co.*, is an example of another exception. 14 F.3d 781 (2d Cir.1994). In *Tongkook* a post-filing event illustrated a mistake in the complaint with respect to the amount in controversy. *Id.* at 786. We affirmed the district court's dismissal for lack of jurisdiction because we could say to a "legal certainty" that the balance due was actually below the threshold amount when the complaint was filed.[5] *Id.* at 783, 785. We went on to clarify the limitations of this holding, stating that "[w]here the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Id.* at 785 (internal citations omitted). There was no mistake discovered in the case before us,

and it involves damages that could not be certain at the time of the complaint, rendering *Tongkook* inapposite. *See Wolde–Meskel*, 166 F.3d at 63. Thus, there was no reason for the district court to recalculate the amount in controversy and decline jurisdiction over the actual damages claim based on a post-filing event in this case.

■ On appeal, however, Hall failed to request that the federal court retain jurisdiction over his actual damages claim in the event that we affirm the summary judgment dismissal of the consequential damages claim. Initially, in his Notice of Appeal, Hall disputed both (1) the district court's summary judgment dismissal of the consequential damages claim and (2) its finding "that the amount in controversy was below the $75,000 jurisdictional threshold." In his brief to this court, however, Hall did not pursue the jurisdictional issue. Hall argued only that the district court erred in granting summary judgment on the consequential damages claim but did not argue that the court should have otherwise retained jurisdiction. Because Hall did not request continued jurisdiction over the actual damages claim and in the interest of judicial economy we therefore do not disturb the dismissal of Hall's actual damages claim. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 n. 6 (2d Cir.2003) (stating that a party abandons an argument by failing to raise it in appellate brief).

### III. Breach of the implied covenant of good faith and fair dealing

■ We review the district court's summary judgment dismissal of Hall's implied

---

**4.** Post-filing events can be considered when jurisdiction over a state law claim rests solely on supplemental jurisdiction under 28 U.S.C. § 1367. *Wolde–Meskel*, 166 F.3d at 64–65.

**5.** In a diversity case, if a court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be re-

covered "to a legal certainty," the case is dismissed for lack of subject matter jurisdiction. *See Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir.2003); *Wolde–Meskel*, 166 F.3d at 63; *St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89, 58 S.Ct. 586.

covenant of good faith and fair dealing claim de novo. *Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC.*, 376 F.3d 96, 100 (2d Cir.2004). After reviewing the record, we agree with the district court that Hall's implied covenant of good faith and fair dealing claim was entirely duplicative of his breach of contract claim. "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 272 Cal.Rptr. 387, 400 (1990); *accord Bionghi v. Metro. Water Dist. of So. California*, 70 Cal.App.4th 1358, 83 Cal.Rptr.2d 388, 396 (1999). Accordingly, we affirm the district court's summary judgment dismissal of this claim.

IV. *The torts of negligent appropriation of electronic communication and intentional interference with electronic communication*

█ We affirm the district court's dismissal of these claims because (1) Hall's claims against EarthLink flow from the contract and Hall has not shown that EarthLink owed him an additional duty which would justify relief sounding in tort and (2) Hall has not presented a reasonable showing that existing torts, such as prima facie tort, are not adequate to protect his interests.

## CONCLUSION

For the reasons we have discussed, we affirm the judgment of the district court.