**ATLANTIS INFORMATION TECHNOLOGY, GmbH, Plaintiff,**

v.

**CA, INC., Defendant.**

**No. 06–cv–3921 (ADS)(WDW).**

United States District Court, E.D. New York.

April 30, 2007.

Sills Cummis Epstein & Gross P.C., New York, NY by Marc S. Friedman, Athena Sue-si Cheng, Marc David Youngelson, of counsel, for Plaintiff.

Foley & Lardner LLP, New York, NY by Seth L. Levine, John F. Zabriskie, of counsel, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On August 14, 2006, Atlantis Information Technology, GmbH (the "Plaintiff" or "Atlantis") filed a complaint, and on August 21, 2006, filed an amended complaint against CA, Inc. (the "Defendant" or "CA"). The Plaintiff alleges that the Defendant breached a contract; violated the implied covenant of good faith and fair dealing; breached its fiduciary duty; fraudulently concealed information; infringed on the Plaintiff's copyright; and was unjustly enriched.

Currently pending before the Court is a motion by the Defendant, under Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6), to dismiss all claims in the amended complaint except count one, the breach of contract claim.

### I. BACKGROUND

The following facts are taken from the Plaintiff's amended complaint. The Plaintiff, a German corporation, develops, licenses and maintains software products such as the E/NAT product. The E/NAT product provides an interface between a CA product, "Endevor," and two other products produced by Atlantis, "NATURAL" and "PREDICT." Atlantis owns copyrights and trademarks for the E/NAT product. The Defendant, a Delaware corporation with its principal place of business in New York, licenses software, such

as the E/NAT product, from the Plaintiff and distributes the software to its customers. The Defendant is one of the world's largest providers of management software.

On February 28, 1997, Atlantis and CA entered into a written software license agreement (the "Agreement"), pursuant to which Atlantis agreed to license the E/NAT product to CA. Pursuant to the Agreement, CA is permitted to market, distribute and sublicense the E/NAT product throughout the world. CA agreed to pay license and maintenance fees (collectively "Royalties") to Atlantis. Specifically, pursuant to the Agreement, CA is required to pay Atlantis 40% of the licensing revenues it receives and 50% of the maintenance fees it receives. The Agreement further provides that when CA sells or licenses the E/NAT product together with its own software, "bundling" the software, CA will pay Atlantis royalties based on a pro rata amount attributable to the E/NAT product. In addition, pursuant to the Agreement, CA may provide the E/NAT product to customers on a "test" installation basis for 120 days without paying Royalties to Atlantis. After the expiration of the 120 day "test" period, CA must identify the customer and pay Royalties to Atlantis.

Pursuant to the Agreement, CA is further required to provide Atlantis with quarterly revenue reports (the "Reports") detailing its E/NAT product licensing activities. The Plaintiff claims that it trusts and relies on CA to provide accurate and truthful Reports because the licensing information is solely in CA's possession and control. The Defendant is required to maintain accurate records of its licensing activities and, pursuant to the Agreement, Atlantis may audit CA's records. If an audit reveals that CA understated its obligations to Atlantis by more than 10%, the Agreement requires CA to pay the costs of the audit. Atlantis contends that it "placed a special trust and confidence in CA throughout their relationship." Atlantis also claims that it entrusts the E/NAT products to CA, and that, as a result of Atlantis' trust, CA owes Atlantis a fiduciary duty to accurately disclose licensing activities and pay Royalties.

According to the amended complaint, throughout the parties' relationship, they have had various disputes regarding the Agreement. As a result, the parties entered amendments to the Agreement (the "amendments") on various occasions. After a dispute regarding whether CA should pay Royalties on "shelf licenses," the parties executed a letter amendment pursuant to which CA agreed to pay an annual royalty of $100,000 relating to "shelf licenses." Thereafter, the parties again amended the Agreement, redefining the Royalty formula and requiring CA to report the lengths of licensing terms and the types of machines for which the E/NAT product was licensed. Specifically, pursuant to these amendments, CA is required to pay an initial license fee of 34% of the list price, and subsequent to the initial license period, 50% of the aggregate maintenance renewal revenues.

Atlantis contends that CA failed to pay Royalties in compliance with the Agreement. Atlantis claims that in January 2004, it discovered that CA had submitted various false Reports, concealing customers and thereby, avoiding paying Royalties. CA further failed to completely report licensing activities for some customers. Following negotiations, in December 2004, the parties entered into a settlement agreement (the "Settlement") and a third amendment to the Agreement. Pursuant to the Settlement, CA agreed to pay Atlantis a sum of money and, pursuant to the third amendment to the Agreement, CA was again required to

pay license and maintenance fees of 34% of the list price regardless of the sublicense fees it receives.

The Plaintiff alleges that on January 15, 2005, CA issued a Report which failed to provide the information required by the Agreement and amendments. The Plaintiff contends that, despite its requests that CA comply, CA continued to provide Reports that failed to comply with the parties' contractual obligations. Further, the Plaintiff alleges that the post-Settlement Reports revealed numerous unreported and underreported customers for which CA had failed to pay Royalties. As a result of the alleged discrepancies in the Reports, Atlantis demanded an audit of CA's licensing activities. The audit revealed numerous problems with the Royalty payments and various violations of the Agreement, the Settlement and amendments.

Atlantis alleges that CA breached the Agreement, the Settlement and the amendments by failing to provide accurate Reports; report all test installations; and pay appropriate Royalties. Atlantis further contends that the Agreement contains an implied covenant of good faith and fair dealing and that CA also breached this covenant by concealing information that should have been provided pursuant to the Agreement; failing to pay Royalties; and providing false Reports. In addition, Atlantis claims that CA breached a fiduciary duty that arose from the parties' history of dealings; CA's superior knowledge of licensing activities; and Atlantis' entrusting of its product to CA. Atlantis claims that this fiduciary duty was breached by CA's failure to provide accurate Reports; disclose licensing activities; and pay Royalties. The Plaintiff further contends that CA fraudulently concealed customers and committed fraud by providing false and misleading Reports. Further, Atlantis

claims that CA is infringing on its copyright by distributing the E/NAT product without paying Royalties. Also, CA is being unjustly enriched by failing to pay proper Royalties on E/NAT products that are sold "bundled" to CA's own products. It is undisputed that the Agreement and contracts are still in effect and have not been terminated or rescinded. The Agreement and amendments are attached to the amended complaint.

On October 10, 2006, the Defendant moved to dismiss the following counts of the amended complaint: count two, breach of the implied covenant of good faith and fair dealing; count three, breach of fiduciary duty; count four, fraud; count five, copyright infringement; and count six, unjust enrichment. The Defendant contends that: (1) the Court should dismiss the Plaintiff's breach of the duty of good faith and fair dealing claim because there is no cause of action separate and apart from the Plaintiff's breach of contract claim; (2) the Court should dismiss the breach of fiduciary duty claim because the parties had an ordinary business relationship and there was no fiduciary relationship; and (3) there is no cause of action for fraud because the only fraud allegation relates to the breach of the contract. The Defendant further claims that the copyright infringement and unjust enrichment claims should be dismissed because the contract is still in effect, and therefore, the Defendant has the right to distribute the E/NAT product.

In opposition to the Defendant's motion, the Plaintiff contends that: (1) its claim for breach of the implied covenant of good faith is not duplicative of its breach of contract claim because the failure to pay Royalties is breach of contract but falsifying records is a breach of the duty of good faith; (2) a breach of fiduciary duty can exist and arise out of the relationship created by the contract; (3) the fraudulent

scheme set forth in the amended complaint is not duplicative of the breach of contract claim because it goes beyond the failure to pay Royalties; (4) the copyright infringement claim should not be dismissed because, although the Agreement remains in effect, by failing to pay Royalties, CA is exceeding the scope of its license and Atlantis can rescind it at any time, allowing it to assert infringement as an alternative theory; and (5) the unjust enrichment claim should not be dismissed because unjust enrichment would apply if the Court finds that the licensing arrangement regarding "bundling" falls outside the scope of the Agreement.

## II. DISCUSSION

### A. The Standard of Review for a Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir.2005); *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Under New York Law, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim. "[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir.2002) (citing *Fasolino Foods Co., Inc., v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992)). Accordingly, under this rule, the second count of the amended complaint, alleging breach of the implied covenant of good faith and fair dealing, should be dismissed as duplicative. *See Village On Canon v. Bankers Trust Co.*, 920 F.Supp. 520, 534 (S.D.N.Y.1996) (breach of good faith and fair dealing claim does not provide independent basis for recovery); *Canstar v. J.A. Jones Const. Co.*, 212 A.D.2d 452, 622 N.Y.S.2d 730, 731 (1st Dep't 1995) (dismissing claim for breach of covenant of good faith and fair dealing as "extrinsically tied to the damages allegedly resulting from a breach of contract").

The Plaintiff alleges that it can maintain a claim for the breach of an implied covenant of good faith and fair dealing because it sets forth allegations that go beyond CA's failure to pay Royalties, and therefore, beyond the breach of contract. However, in the amended complaint, the Plaintiff alleges that the Defendant breached the Agreement, amendments and Settlement by failing to provide accurate Reports; failing to pay Royalties; and failing to report test installations. The Plaintiff alleges that the Defendant breached the implied duty of good faith by failing to provide accurate Reports; failing to make Royalty payments; and providing false

Reports. The allegations set forth in support of the claims are almost identical. Clearly, the Plaintiff's breach of contract claim is not limited to the Defendant's failure to pay Royalties. Rather, throughout the amended complaint, the Plaintiff alleges that, pursuant to the Agreement and amendments, CA is required provide accurate Reports.

In the present case, the alleged breach of the implied duty of good faith and fair dealing claim merely repeats the allegations set forth in count one of the amended complaint for breach of contract. "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Hall v. EarthLink Network, Inc.,* 396 F.3d 500, 508 (2d Cir.2005). *See also Harris,* 310 F.3d at 81 ("New York law, as discussed above, does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled").

Accordingly, count two of the Plaintiff's amended complaint for breach of the implied covenant of good faith and fair dealing is dismissed.

## C. Breach of Fiduciary Duty

██ To prove a claim for breach of fiduciary duty, the plaintiff must demonstrate: (1) the existence of a fiduciary relationship between the parties; and (2) a breach of the fiduciary duty. *See CFSC Capital Corp. XXVII v. W.J. Bachman Mechanical Sheet Metal Co., Inc.,* 247 A.D.2d 502, 669 N.Y.S.2d 329 (2d Dep't 1998). "[F]our elements that . . . are essential to the establishment of a fiduciary relationship: (1)[t]he vulnerability of one

party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." *Osan Ltd. v. Accenture LLP,* 454 F.Supp.2d 46, 56–57 (E.D.N.Y.2006) (citing *Langford v. Roman Catholic Diocese of Brooklyn,* 177 Misc.2d 897, 677 N.Y.S.2d 436, 438 (N.Y.Sup.Ct. 1998), *aff'd,* 271 A.D.2d 494, 705 N.Y.S.2d 661 (2d Dep't 2000)).

██ "[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Cal Distrib. v. Cadbury Schweppes Ams. Bevs., Inc.,* No. 06 Civ. 0496, 2007 WL 54534, at *9, 2007 U.S. Dist. LEXIS 854, at *30 (S.D.N.Y. Jan.5, 2007) (internal citations omitted); *Osan Ltd.,* 454 F.Supp.2d at 57 ("[w]here parties deal at arms-length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances"). "It is thus clear that a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." *Osan Ltd.,* 454 F.Supp.2d at 57.

██ In the present case, although the Plaintiff alleges that CA has superior knowledge regarding its licensing activities and that it entrusted CA with its products for distribution, the parties have no more than a conventional business relationship. The Plaintiff has "not alleged facts suggesting an obvious disparity between the parties, nor have extraordinary circumstances been alleged that would give rise to a fiduciary relationship between the Plaintiff[ ] and [CA]." *Cal Distrib.,* 2007 WL 54534, at *9, 2007 U.S. LEXIS at * 30 (internal citations omitted). Both

parties are commercial companies and although the Plaintiff contends that it had trust and confidence in the Defendant, that is not extraordinary. Moreover, although the Plaintiff claims that the Defendant has superior knowledge, there is no allegation of obvious disparity between these parties.

In the Court's view, as a matter of law, the Plaintiff has not adequately pleaded the existence of a fiduciary relationship between the parties. The Plaintiff's claim for breach of fiduciary duty fails because "there is no basis for inferring that the trust and confidence [Atlantis] reposed in [CA] was anything more than the type parties normally seek before entering an arms-length transaction, and there is no basis for concluding that the transaction was not made at arms length." *Rogers v. HSN Direct Joint Venture,* No. 97 Civ. 7710, 1998 WL 566804, at *3, 1998 U.S. Dist. LEXIS 13932, at *8 (S.D.N.Y. Sept. 4, 1998).

Even if the Court were to find that the Plaintiff adequately pleaded the existence of a fiduciary relationship, the Court nevertheless would grant the motion to dismiss because the breach of fiduciary duty claim is based upon the same allegations contained in the first count of the amended complaint to recover damages for breach of contract. Specifically, the Plaintiff alleges that the Defendant breached its fiduciary duty by failing to pay Royalties and failing to provide accurate Reports, the same claims raised in support of the Plaintiff's breach of contract claim. "A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *Cal Distrib.,* 2007 WL 54534, at *9, 2007 U.S. Dist. LEXIS at *28 (citing *William Kaufman Organization, Ltd. v. Graham & James LLP,* 269 A.D.2d 171, 703 N.Y.S.2d 439, 442 (1st Dep't 2000)).

Accordingly, count three of the Plaintiff's amended complaint for breach of fiduciary duty is dismissed.

## D. Fraud and Fraudulent Concealment

A fraud cause of action "must be dismissed where the only fraud alleged relate[s] to the cause of action to recover damages for breach of contract." *Cal Distrib.,* 2007 WL 54534, at *8, 2007 U.S. Dist. LEXIS at * 24–25 (citing *Tucker v. AM Sutton Associates,* 16 A.D.3d 670, 792 N.Y.S.2d 539 (2d Dept.2005)) (internal citations omitted). "To state a fraud claim coexistent with an alleged breach of contract, [the Plaintiff] must: '(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Id.* (citing *Stillman v. Townsend,* No. 05 Civ. 6612, 2006 WL 2067035, at * 6, 2006 U.S. Dist. LEXIS 50770, at *6 (S.D.N.Y. July 26, 2006)).

In the present case, the Plaintiff is unable to demonstrate that its fraud claim is based on a legal duty separate and apart from the Defendant's contractual obligations or that the Defendant made a fraudulent misrepresentation extraneous to the contract. Specifically, in support of the Plaintiff's claim of fraud, the Plaintiff contends that "CA agreed with Atlantis in the [Agreement], and then in the Settlement ... to fully and correctly report its licensing activities and that, pursuant to the Contracts, CA would pay to Atlantis the agreed on Royalties." In further support of its fraud cause of action, the Plaintiff states that CA made false and misleading statements in the Reports and failed to pay Royalties. The Defendant's alleged fraudulent conduct is directly related to the Agreement, amendments and Settle-

ment between the parties. In fact, the Plaintiff specifically contends that by making false statements in the Reports and failing to pay Royalties, the Defendant breached the Agreement. By the Plaintiff's own admissions, "the alleged misrepresentation [by CA] was neither collateral nor extraneous to the agreements; rather it was related and intrinsic to [the Agreement and Settlement]." *Cal Distrib.*, 2007 WL 54534, at *8, 2007 U.S. Dist. LEXIS at * 24–25 (citing *Bear, Stearns Funding, Inc. v. Interface Group–Nevada, Inc.*, 361 F.Supp.2d 283, 311 (S.D.N.Y.2005)).

Moreover, although, in support of its claim of fraud, the Plaintiff contends that "Atlantis and CA had a special relationship of trust and confidence," the Plaintiff does "not allege any sort of special relationship among the parties or other situation that would give rise to a legal duty apart from the parties' contractual relationships." *Cal Distrib.*, 2007 WL 54534, at *8, 2007 U.S. Dist. LEXIS at *25–26 (citing *Bezuszka v. L.A. Models, Inc.*, No. 04 Civ. 7703, 2006 WL 770526, at *8, 2006 U.S. Dist. LEXIS 13620 at *13 (S.D.N.Y. March 24, 2006)).

Accordingly, count four of the Plaintiff's amended complaint for fraud must be dismissed.

**E. Copyright Infringement**

While "[c]opyright infringement is the violation of an owner's copyright interest by a non-owner. . . . It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him." *United States Naval Inst. v. Charter Communications, Inc.*, 936 F.2d 692, 695 (2d Cir.1991) (internal citations omitted). As a result, "an exclusive licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it." *Id.* Moreover, "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir.1998) (internal citations omitted).

In the present case, it is undisputed that the Plaintiff granted the Defendant a license to utilize its copyright. It is further undisputed that the Agreement and other contracts were never terminated or rescinded. "An action for copyright infringement lies once a licensing contract expires." *Berger v. Computer Information Publ., Inc.*, 1984 WL 595, at *2, 1984 U.S. Dist. LEXIS 15291, at *7 (S.D.N.Y. 1984) (citing *Kamakazi Music Corp. v. Robbins Music Corporation*, 684 F.2d 228, 230 (2d Cir.1982)). As a result, with a license in effect, the Plaintiff is unable to set forth a valid copyright infringement claim.

Although the Plaintiff claims that the Defendant is infringing on the copyright by failing to pay Royalties pursuant to the contracts between the parties, the Plaintiff's argument fails. The Second Circuit has held that the payment of royalties pursuant to a contractual agreement is a covenant, and as such, "if the [licensee's] improper conduct constitutes a breach of a covenant undertaken by the [licensee] . . . and if such covenant constitutes an enforceable contractual obligation, then the [licensor] will have a cause of action for breach of contract, not copyright infringement." *Graham*, 144 F.3d at 236 ("James argues that the license was voided when Graham breached its conditions by non-payment of royalties . . . This argument turns—and fails—on the distinction in contract between a condition and a covenant . . . We think that the payment of royalties and the inclusion of a notice crediting

James's authorship are to be considered covenants") (internal citations omitted). Moreover, although a material breach of a covenant, such as the non-payment of royalties, "will allow the licensor to rescind the license and hold the licensee liable for infringement for uses of the work thereafter," recision of the contract only occurs upon affirmative acts by the licensor, and a breach by one party does not automatically result in recision of a contract. *Id.* at 238 ("New York law does not presume the rescission or abandonment of a contract and the party asserting rescission or abandonment has the burden of proving it").

The Plaintiff contends that, pursuant to Fed.R.Civ.P. 8(a), it is permitted to plead alternative claims for relief and that in the present case, it may decide to terminate the Agreement at a later date, and, at trial, argue that the Defendant infringed on its copyright. However, although Rule 8 does permit parties to plead alternative claims, the Plaintiff may not plead a speculative claim that did not exist at the time of the filing of the complaint and as of the present time, still does not exist. *Hoyle v. Wiley*, No. 99–CV–1330, 2001 WL 1860957, at *2, 2001 U.S. Dist. LEXIS 23753, at *5 (N.D.N.Y. Feb. 13, 2001) ("[The] ripeness doctrine reflects the principle that courts should decide only a real, substantial controversy, not a mere hypothetical question ... Courts will find a case to lack ripeness when it involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal citations omitted); *Datskow v. Teledyne Continental Motors Aircraft Prods., Div. of Teledyne Indus., Inc.*, 807 F.Supp. 941, 946 (W.D.N.Y.1992) ("contingencies are simply too speculative to support a claim for damages"); *Edrei v. Copenhagen Handelsbank A/S*, No. 90 Civ. 1, 1991 WL 64201, at *4–5, 1991 U.S. Dist. LEXIS 5369, at *13 (S.D.N.Y. Apr. 18, 1991) ("Damages cannot be based on speculation") (internal citations omitted).

The contracts in this case are in effect and the Plaintiff has not terminated or rescinded any of the contracts or the Agreement. As a result, the Defendant has a license to use the copyright at issue and the Plaintiff's infringement claim cannot succeed. Moreover, the Plaintiff may not speculate regarding the possibility that it may terminate the contracts in the future. Accordingly, count five of the Plaintiff's amended complaint for copyright infringement must be dismissed.

## F. Unjust Enrichment

■■■ "It is important to note ... the nature of an unjust enrichment claim in New York: 'The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.'" *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586–587 (2d Cir.2006) (citing *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 841 N.E.2d 742, 807 N.Y.S.2d 583 (N.Y.2005)). According to the Second Circuit

> As the New York Court of Appeals has explained: The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter ... It is impermissible ... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.

*Id.* at 587 (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89, 516 N.E.2d 190, 521 N.Y.S.2d 653 (N.Y. 1987)). In *Beth Israel Medical Ctr.*, the Second Circuit determined that the plain-

tiff could "not recover under a theory of unjust enrichment, inasmuch as the valid and enforceable written [contracts] governed the particular subject matter of this case." *Id.*

 In the present case, the Defendant argues that the unjust enrichment claim must be dismissed because a valid and enforceable contract precludes the Plaintiff from recovery under this theory of liability. However, the Plaintiff claims that the Defendant was unjustly enriched by improperly calculating Royalties when "bundling" the E/NAT product for sale with other products, a claim different from that set forth in support of the Plaintiff's breach of contract claim and the other counts of the complaint. In fact, in its opposition papers, the Plaintiff contends that "there were provisions of the [Agreement] that governed royalties to be paid when E/NAT was 'bundled' with other CA products." In the same paragraph, the Plaintiff later contends that the Defendant's motion to dismiss should be denied because the Court could find that this issue "falls outside the scope of the [contracts]" and, therefore, that the Defendant could have been unjustly enriched.

By the Plaintiff's own admissions, a valid and enforceable contract governs Royalties owed when the E/NAT is "bundled" with other products by the Defendant. In fact, this Court's own review of the contracts at issue reveals a section entitled "Bundled Product Sales." Although the Plaintiff again argues that it can set forth alternative claims for relief, this claim is speculative and in direct contradiction of the Plaintiff's contention regarding the applicability of a valid and enforceable contract that directly advises the parties on "bundling" of products.

Accordingly, the Court finds that the Plaintiff can "not recover under a theory of unjust enrichment, inasmuch as the valid and enforceable written [contracts] govern[ ] the particular subject matter of this case." *Beth Isr. Med. Ctr.*, 448 F.3d at 586–587. As such, the Defendant's motion to dismiss count six of the amended complaint for unjust enrichment is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendant's motion to dismiss is **GRANTED** in that the following counts of the amended complaint are dismissed: two; three; four; five; and six; and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge William D. Wall in order to set a discovery schedule with regard to the one remaining count sounding in breach of contract.

**SO ORDERED.**