[674 NYS2d 17]

J. DAVID SWIFT, Appellant, v KI YOUNG CHOE et al., Respondents.

First Department, June 4, 1998

### APPEARANCES OF COUNSEL

*John M. Brickman* of counsel (*Howard B. Sachs* on the brief; *Ackerman, Levine & Cullen, L. L. P.,* attorneys), for appellant.

*Lester Esterman* of counsel (*Bergadano, Zichello & McIntyre, L. L. P.,* attorneys), for respondents.

### OPINION OF THE COURT

Saxe, J.

Where two clients with potentially competing interests agree to have the same attorney represent them, and ratify this dual representation by a written acknowledgment and release, are claims of attorney malpractice necessarily foreclosed? We hold that they are not.

The essential facts are as follows: until December 20, 1991, plaintiff J. David Swift (David) was nominally the owner of properties located at 130 South Second Street and 342 Bedford

Avenue, in Brooklyn. However, his uncle, Carl Swift (Carl), who had originally owned the properties and deeded them to David, continued to manage them and live off their income. Indeed, David had furnished Carl with powers-of-attorney so he could control and deal with the properties.

Prior to December 20, 1991, Carl agreed to convey title to the properties to Gilbert Morrell (Gilbert), with the intent to live off the income from Gilbert's periodic payments for the purchase of the property. In addition, Gilbert had agreed to purchase a third property from a separate seller, with David lending the purchase money; Carl expected Gilbert's monthly payments on this loan to contribute to his income as well.

Gilbert retained defendant Ki Young Choe, an attorney with the defendant law firm of Hershman & Choe, to handle the transactions. When Carl met with Gilbert and Choe, he declined to hire separate counsel to represent his interests in the planned transaction, relying instead upon Choe. The parties' understanding was not that Carl was acting without counsel, but rather, that he, too, was retaining Choe to act as his attorney.

There are sharp disputes of fact as to the number of meetings between counsel and the parties to the transaction; the parties also dispute what was discussed. However, Choe acknowledged in his deposition that as the deal was initially structured, the parties intended to utilize purchase-money mortgages, and that only subsequently was it suggested that mortgages would prevent Gilbert from obtaining loans to accomplish the intended renovation of the properties.

The transaction, as ultimately structured, was one-sided. At the closing, Carl was first informed that Gilbert's wife, Milagros Morrell (Milagros), a nursery school teacher with no assets, was to take title to the three properties. Neither Gilbert nor Milagros paid any money up front, either as a down payment or as closing costs, nor was a mortgage or UCC-1 statement filed against the properties. The consideration paid by Gilbert and Milagros Morrell in exchange for obtaining title to three properties consisted solely of Milagros's promissory notes and confessions of judgment, to be held in escrow by defendants. In sum, David was turning over title to two properties, making a substantial loan for the purchase of a third, and paying all closing costs, in exchange for only a promise of future monthly payments and the right to execute judgment against a virtually judgment-proof individual. Gilbert and Milagros were obtaining title to three properties in exchange for mere promises.

On December 20, 1991, before proceeding with the closing, defendants required Carl, Gilbert and Milagros to sign both a letter of acknowledgment and a release in favor of defendants. The letter, dated December 20, 1991, provides in part as follows:

"At the outset, it has been fully explained to you that it is in the best interests of both parties to retain individual counsel with regards to these matters. That irrespective of same, both of you expressly acknowledge that you have decided and agreed to have our office handle these closings on behalf of both parties. With respect to same you hereby agree to waive and release our firm as against any claim you may have with respect to these matters concerning this dual representation.

"That you further expressly acknowledge that both parties have mutually agreed that they will not be filing mortgages with the deeds with the Kings County Clerks Office with regards to these properties. We have explained to you the ramifications of such action, including but not limited to the fact that by reason of this action the seller is consequently in the position of an unsecured creditor with respect to claims arising from these premises. As an attempt to protect the interest of the seller thereby, confessions of judgment have been executed by Mrs. Morrell in favor of Mr. Swift, and our office shall be holding same in escrow. With respect to same you hereby agree to waive and release our firm against any claim you may have with respect to these matters concerning your independent decision not to file mortgages herein. You also expressly acknowledge that we have advised you that the proper procedure in these regards would be for said mortgages to be filed and paid for by the parties."

Seeking to protect themselves as fully as possible, defendants also had their clients sign a general release containing language waiving "all actions, causes of action, [etc.] * * * for all claims arising from the representation by [defendants] of [Gilbert Morrell, Milagros Morrell, and Carl Swift as attorney in fact for J. David Swift] with regards to closings held on December 20, 1991". Carl and the Morrells executed both documents, and the closing proceeded.

In the months following the closing, the Morrells failed to make the requisite payments. It is further claimed that at this point defendants failed to timely comply with their contractual and fiduciary duties when informed of the Morrells' default in payment. Following commencement of this action, Carl Swift died on February 13, 1995.

Defendants' summary judgment motion was based upon Carl's execution of the letter of acknowledgment and the release, which defendants contend preclude this action for malpractice, breach of contract and breach of fiduciary duty.

The motion court agreed, concluding that since both the buyers and the sellers were fully advised of their rights and nevertheless made a determination to go forward with the transaction, as a matter of law, counsel acted properly under Code of Professional Responsibility DR 5-105 (C) (22 NYCRR 1200.24 [c]). We disagree.

Initially, DR 5-105 (C) (22 NYCRR 1200.24 [c]) permits lawyers to represent multiple clients *only* "if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each".

Here, it can only be determined at trial whether and to what extent counsel ascertained that Carl fully understood and appreciated the risk he was undertaking, and advised him of his precarious position. The circumstances of this transaction are sufficiently questionable that until such findings of fact are made, the Court cannot determine whether the lawyer could adequately represent Carl's interests while also representing Gilbert. Therefore, it was error to conclude in the context of a summary judgment motion that the dual representation was proper as a matter of law. DR 5-105 (C) cannot form the basis for dismissal of the action.

Nor does Carl's execution of the release on December 20, 1991 warrant dismissal under CPLR 3212. First of all, soliciting a client's execution of a release during the course of representation violates Code of Professional Responsibility DR 6-102 (A) (22 NYCRR 1200.31 [a]): "*A lawyer shall not seek, by contract or other means, to limit prospectively the lawyer's individual liability to a client for malpractice*, or, without first advising that person that independent representation is appropriate in connection therewith, to settle a claim for such liability with an unrepresented client or former client" (emphasis added; *see also*, EC 6-6). While a violation of a disciplinary rule "does not, in itself, generate a cause of action" (*Brainard v Brown*, 91 AD2d 287, 289; *see also*, *Mergler v Crystal Props. Assocs.*, 179 AD2d 177, 183), a release obtained in violation of a disciplinary rule should not serve to shield a lawyer from liability before the facts and circumstances surrounding the execution of the document are fully examined.

Indeed, *Mergler v Crystal Props. Assocs.* (179 AD2d 177, 181, *supra),* while upholding the validity of a release entered into *following the termination* of a lawyer-client relationship, specifically distinguished between such releases and those executed "during the course of the attorney-client relationship". The *Mergler* Court specified that as to releases in favor of an attorney executed by a client *in the course of the representation,* the attorney "must establish affirmatively that the agreement is in every respect free from fraud on the attorney's part" (*Mergler v Crystal Props. Assocs., supra,* at 181, citing *Whitehead v Kennedy,* 69 NY 462, 466). The Court in *Whitehead v Kennedy (supra,* at 466) enunciated as a "general principle * * * firmly established, and universally recognized" that "an attorney who seeks to avail himself of a contract made with his client, is bound to establish affirmatively that it was made by the client with full knowledge of all the material circumstances known to the attorney, and was in every respect free from fraud on his part, or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him". Therefore, defendants must establish not only that they obtained Carl's signature on the documents without fraud, duress or overreaching, but also that the presentation and execution of the release was accomplished with Carl's full understanding of the nature of the transaction (*see also, Greene v Greene,* 56 NY2d 86, 92).

Plaintiff has asserted that (1) Carl's severe vision problems would have prevented him from deciphering the contents of the release before signing it, and (2) the attorney failed to explain the contents of the release to Carl on December 20, 1991. In view of these allegations as well as the circumstances of the transaction, Carl's signature on the release cannot alone satisfy defendants' burden.

Moreover, the release, despite its intended breadth, does not clearly specify that it includes within its ambit a waiver of claims of malpractice in defendants' representation of Carl. Generally, "the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence and * * * such agreements are subject to close judicial scrutiny" (*Gross v Sweet,* 49 NY2d 102, 106). "[U]nless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts" (*supra,* at 107). Thus, in *Gross v Sweet,* a release in favor of a parachute-jumping school waiving all claims arising out of the plaintiff's " 'learning, practicing or

actually jumping from an aircraft' " was held to not cover claims that the school acted negligently (49 NY2d, *supra,* at 109).

The terms of the release signed by Carl do not unmistakably express that a potential claim for malpractice is being waived. Consequently, the malpractice cause of action was not waived.

We emphasize that it is not an alleged violation of the disciplinary rules that forms the basis of the malpractice claim, although some of the conduct constituting a violation of a disciplinary rule may also constitute evidence of malpractice. In support of the attorney malpractice claim, plaintiff asserts that defendants violated the duty of care owed to clients by failing to provide necessary and appropriate advice to Carl as an individual client, with respect to the ramifications of going through with the deal. Particularly in view of the unusual risks this transaction offered to the Swifts, any attorney representing Carl (as attorney-in-fact for David) was under an obligation to make sure he understood exactly what those risks were. The question of whether defendants satisfied that obligation must be answered by the finder of fact.

■ Finally, in any case, the release does not provide a sufficient basis for dismissal of those causes of action arising out of conduct alleged to have taken place subsequent to execution of the release. The release by its terms discharged only claims existing at the time of its execution, relating to the closing. Therefore, the causes of action alleging that defendants violated their fiduciary duties and breached their contractual duties as escrow agents, by failing to timely and properly respond to notice of the Morrells' default, should not have been dismissed.

Accordingly, the order of the Supreme Court, New York County (Harold Tompkins, J.), entered on or about April 10, 1997, granting defendants' motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, the motion denied, the complaint reinstated, and the matter remanded for further proceedings.

MILONAS, J. P., WILLIAMS, TOM and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered on or about April 10, 1997, reversed, on the law, without costs, the motion for summary judgment dismissing the complaint denied, the complaint reinstated, and the matter remanded for further proceedings.