■ WILLIAM KAUFMAN ORGANIZATION, LTD., et al., Appellants, v GRAHAM & JAMES L. L. P. et al., Respondents. [703 NYS2d 439] —Order, Supreme Court, New York County (Barry Cozier, J.), entered May 28, 1999, which, *inter alia*, granted the motions pursuant to CPLR 3211 (a) (7) to dismiss the third cause of action for tortious interference against defendants Nomura International PLC (PLC), Nomura Securities International Inc. (NSI), Nomura Asset Capital Corporation (NACC) and Nomura Holding America, Inc. (NHA), collectively "Nomura", and defendant Capital Company of America LLC (CCA), granted the motion to dismiss the first cause of action for breach of fiduciary duty against defendants Graham & James L. L. P., Kenneth Zuckerbrot and David Findlay, collectively the Graham and James defendants, and denied the motion to dismiss the second cause of action for breach of contract against the Graham & James defendants, unanimously modified, on the law, to reinstate the third cause of action and, except as thus modified, affirmed, without costs or disbursements. Order, same court and Justice, entered August 31, 1999, which dismissed the second cause of action for breach of contract, unanimously reversed, on the law, without costs or disbursements, and the second cause of action reinstated.

This litigation is an outgrowth of an earlier and still pending November 1996 action by plaintiff, The William Kaufman Organization, Ltd., Melvyn Kaufman, Sage Realty Corporation and eight limited liability corporations, against Proskauer Rose L. L. P. (Proskauer) alleging legal malpractice arising out of Proskauer's representation of plaintiffs in the restructuring and refinancing of debt on four commercial buildings in Manhattan owned and/or managed by plaintiffs. Plaintiffs' financial advisor, NSI, which arranged for its affiliate NACC to be the lender, was also a defendant in that action. Plaintiffs claim that the restructured loans were to be collateralized only by the buildings' leaseholds and not the fee interests. Unbeknownst to plaintiffs, however, the actual transactions included mortgages on both the leasehold and fee estates. As a result, plaintiffs were prevented from obtaining a release of any of the mortgages under a procedure known as "defeasance". While

defeasance would have permitted the substitution of other collateral for some of the leaseholds, a mortgage on the fee interest allegedly renders defeasance an impossibility.

Plaintiffs retained the law firm of Ross & Hardies, of which defendant Zuckerbrot, alleged to have played an active role in the Proskauer/Nomura action, was a member. In October 1997, Zuckerbrot left Ross & Hardies to join the law firm of Graham & James but continued to provide legal services to plaintiffs in the Proskauer/Nomura action. Defendant Findlay, a London-based partner at Graham & James specializing in real estate, provided assistance to plaintiffs with respect to various transactions in the United Kingdom. Apparently, Findlay was simultaneously representing PLC, another Nomura entity. On December 10, 1998, Zuckerbrot advised plaintiffs that Graham & James had signed a retainer agreement with CCA, another Nomura company, and that Graham & James would no longer represent them in the Proskauer/Nomura action. When negotiations to resolve the conflict and prevent Zuckerbrot's departure to represent Nomura entities proved unavailing, this action was commenced. The complaint alleged causes of action for breach of fiduciary duty and breach of contract against the Graham & James defendants and a cause of action for tortious interference with contract, i.e., the agreements between the attorneys and plaintiff regarding legal representation, against CCA and the Nomura defendants.

On January 4, 1999, plaintiffs moved in the Proskauer/Nomura action to enjoin preliminarily the Graham & James defendants from continuing to represent the Nomura defendants while the Proskauer/Nomura action was pending. The IAS Court denied the motion and this Court reversed (263 AD2d 440, 441), finding "a genuine potential for conflict". Earlier, before the IAS Court's denial of the motion for a preliminary injunction, defendants had moved to dismiss the complaint. In the first order on appeal, the court dismissed the causes of action for breach of fiduciary duty and tortious interference with contract but sustained the cause of action for breach of contract. After this Court reversed the denial of a preliminary injunction and enjoined the Graham & James defendants, the IAS Court dismissed the breach of contract cause of action, finding that the claim was predicated solely upon the professional obligations of said defendants to act "in accordance with the professional standards governing the conduct of lawyers in New York" and that no private right of action exists for a violation of the Code of Professional Responsibility. We modify the first order to reinstate the third

cause of action and reverse the second order and reinstate the second cause of action.

While a violation of a disciplinary rule does not generate a cause of action, as the IAS Court held, "some of the conduct constituting a violation of a disciplinary rule may also constitute evidence of malpractice." (*Swift v Choe*, 242 AD2d 188, 194.) In the absence of a contract, the mere violation of a disciplinary rule will not sustain a breach of contract action. (*See, Kantor v Bernstein*, 225 AD2d 500, 501.) Here, plaintiffs have properly pleaded a contract claim, alleging that Graham & James submitted invoices for work performed for them in 1998 in the Proskauer/Nomura litigation, including strategy discussions and settlement negotiations with counsel for the Nomura defendants and selection of an expert to testify about the defeasance issues. These allegations, coupled with evidence of the Graham & James defendants being on the other side of the transaction, may be properly considered as evidence of the breach of an attorney's contractual duties. (*See, Swift v Choe, supra.*) Since plaintiffs do not base their breach of contract claim solely on the attorneys' violations of the disciplinary rules, but, rather, on breaches of a contractual relationship in a complex litigation, the claim should be reinstated.

A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand. (*Perl v Smith Barney, Inc.*, 230 AD2d 664, 666, *lv denied* 89 NY2d 803.) In *Mandelblatt v Devon Stores* (132 AD2d 162), a counterclaim of breach of fiduciary duty for disparaging the employer was found to be separate and distinct from the former employee's alleged failure to perform his duties under the contract. The Court held that "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." (*Supra*, at 167-168.) Here, there is no such distinction. Indeed, the cause of action for breach of contract refers, at paragraph 60 of the complaint, to the unethical conduct described in paragraphs 53 and 54, which constitute the allegations of breach of fiduciary duty. Under such circumstances, the IAS Court properly dismissed the breach of fiduciary duty claim as duplicative.

"A claim of tortious interference requires proof of (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages". (*Foster v Churchill*, 87 NY2d 744, 749-750.) The IAS Court

based the dismissal of this claim against the Nomura defendants and CCA on the ground that it was supported only by bare assertions, stating that not "one detailed allegation outlining the alleged interference" had been offered. The essence of the tortious interference claim is found at paragraph 69 of the complaint in which plaintiffs allege that Nomura and CCA intentionally and maliciously solicited Graham & James to represent them in New York and the United Kingdom, knowing that such representation would preclude Graham & James from representing plaintiffs. Thus, a claim for tortious interference with contract is stated.

Finally, plaintiffs seek reassignment of the case to another Justice because of the purported bias by the IAS Court in its various rulings. This relief was not sought from the IAS Court and the request is thus unpreserved. In any event, that the IAS Court attempted, unsuccessfully, to transfer the matter to another Justice and took over 2 months to decide the preliminary injunction motion, a decision reached only after a petition for mandamus had been filed, do not indicate a bias and will not support a disqualification. Concur—Sullivan, J. P., Tom, Mazzarelli, Saxe and Friedman, JJ.