[818 NYS2d 40]

HF MANAGEMENT SERVICES LLC, Appellant, v FRANK PISTONE et al., Respondents.

First Department, June 27, 2006

**APPEARANCES OF COUNSEL**

*Proskauer Rose LLP*, New York City (*Steven C. Krane* and *David A. Lewis* of counsel), for appellant.

*Littler Mendelson PC*, New York City (*A. Michael Weber* and *Michael P. Pappas* of counsel), for respondents.

## OPINION OF THE COURT

CATTERSON, J.

In this action for breach of employee nonsolicitation agreements and unfair competition, the plaintiff, a management services company, appeals from an order that disqualified plaintiff's original litigation counsel based on the motion court's finding that a fiduciary relationship exists between an underwriter and an issuer, and that such relationship is imputed to that underwriter's due diligence counsel.

In August 2004, the plaintiff, HF Management Services (hereinafter referred to as HF Management) commenced this action against two of its former employees and WellCare (hereinafter referred to collectively as WellCare). HF Management alleged that the employees had breached their nonsolicitation agreements, and that WellCare, as part of an alleged practice had raided HF Management's sales force.

HF Management was represented by Epstein Becker & Green (hereinafter referred to as EBG), a law firm that had conducted a due diligence investigation in connection with WellCare's initial public offering (IPO) of stock the previous year. EBG was hired as due diligence counsel by Morgan Stanley, the underwriter of the IPO. In that role, EBG spent several hundreds of hours reviewing files and interviewing WellCare personnel. EBG reviewed business plans, strategic and market analyses, employee policies, and recruitment and retention documents. It also discussed WellCare's various litigations and litigation strategies with WellCare's head of litigation and later, with its general counsel.

Subsequently, upon commencement of this lawsuit by HF Management, the defendants moved to disqualify EBG on the grounds that it had acquired confidential information in the course of the IPO due diligence investigation that would prejudice the defense. The motion court granted the requested relief. It reasoned that the lack of a formal attorney-client relationship was not dispositive, and that "the crux of disqualification is not the attorney-client relationship itself, but the fiduciary relationship that results from it." The court held that Morgan Stanley as underwriter owed a fiduciary duty to WellCare, and EBG as Morgan Stanley's agent in the IPO shared the underwriter's fiduciary duty to WellCare. For the reasons set forth below, we

find that the motion court erred on the law, and therefore we reverse and deny the defendants' motion seeking disqualification of EBG, the plaintiff's original litigation counsel.

First, we acknowledge that in certain instances where no formal attorney-client relationship exists, a fiduciary obligation has been sufficient grounds for attorney disqualification. (*Greene v Greene*, 47 NY2d 447 [1979].) However, in this case we find that no fiduciary relationship existed between Morgan Stanley and WellCare, and so none may be imputed to EBG as Morgan Stanley's agent.

A fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005], quoting Restatement [Second] of Torts § 874, Comment *a*.) The Court has held that while the determination of a fiduciary relationship is fact-specific, generally no such relationship exists between those involved in arm's length business transactions. (*Northeast Gen. Corp. v Wellington Adv.*, 82 NY2d 158, 162 [1993]; *see also Breakaway Solutions, Inc. v Morgan Stanley & Co. Inc.*, 2004 WL 1949300, \*13, 2004 Del Ch LEXIS 125, \*52-53 [2004] [applying New York law and finding that arm's length business relationship does not give rise to a fiduciary obligation].)

New York law, therefore, essentially does not recognize the existence of a fiduciary obligation that is based solely on the relationship between an underwriter and issuer. The Court of Appeals recently underscored the nonfiduciary nature of the relationship between underwriter and issuer in *EBC I v Goldman, Sachs*, even while finding that a fiduciary relationship may have existed between the two parties in that case. (5 NY3d at 20.)

In arriving at its conclusion, the Court first examined the typical relationship between an underwriter and issuer based on an underwriting agreement. It found that such a contractual relationship alone does not create any fiduciary obligations. (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 20.) The Court described the relationship in connection with an IPO as essentially one between a buyer and seller where typically "the 'issuer'—or company seeking to issue the security . . . sells an entire allotment of shares to an investment firm who purchases the shares [in order] to sell them to the public." (*Id.* at 16 [citation omitted].)

The Court nevertheless allowed for a fiduciary obligation exception where there was a preexisting relationship created independently and apart from the contractual one. (*Id.* at 20.) In that case, EBC I, an Internet retailer also known as eToys, had hired Goldman Sachs, the lead managing underwriter, for its "knowledge and expertise to advise it as to a fair IPO price . . . with eToys' best interest in mind." (*Id.*) The Court observed that, if proved, the reliance of eToys on the advice and expertise of Goldman Sachs would have created a relationship of "higher trust" resulting in a fiduciary obligation of underwriter to issuer. (*Id.*)

However, the Court made quite clear that this case was, colloquially speaking, the exception that proves the rule. (*EBC I v Goldman, Sachs*, 5 NY3d at 21-22.) The Court stated: "We stress . . . that the fiduciary duty we recognize is limited to the underwriter's role as advisor. We do not suggest that underwriters are fiduciaries when they are engaged in activities other than rendering expert advice." (*Id.*)

Indeed, the Court was unequivocal that the fiduciary relationship alleged by the parties in *EBC I v Goldman, Sachs* was "beyond that which arises from the underwriting agreement alone." (5 NY3d at 22.)

In the case at bar, nothing in the record even remotely suggests that the relationship between Morgan Stanley and Well-Care rose above the typical contractual relationship of an underwriting agreement between a buyer and a seller. Both parties were separately counseled. In fact, the underwriting agreement specifically identified EBG as the "special regulatory counsel for the underwriters" and acknowledged that another law firm was serving as outside counsel for WellCare. Certainly, there is no indication or suggestion that Morgan and WellCare enjoyed any type of preexisting relationship, or that Morgan acted as an "expert advisor on market conditions" to WellCare in the same way that Goldman Sachs apparently advised eToys.*

It is true that the motion court's decision of February 16, 2005 predates the Court of Appeals decision in *EBC I v Gold-*

---

* The motion court established Morgan Stanley's fiduciary obligation as arising from the principle that an underwriter "may not profit from corporate information gained in its capacity as underwriter." In so doing, it mistakenly relied on case law like *Frigitemp Corp. v Financial Dynamics Fund, Inc.* (524 F2d 275, 279 [1975]), that allows a characterization of underwriters as fiduciaries of corporations primarily in situations involving confidential, insider information used for profit or benefit prior to an IPO. (*See also Dirks v SEC*, 463 US 646, 655 n 14 [1983].)

*man, Sachs* by almost four months. However, in placing the typical underwriter-issuer relationship beyond the bounds of fiduciary constraints in *EBC I v Goldman, Sachs,* the Court was not creating new law. It was simply reiterating the principles of a "long-established and well-understood" contractual relationship between underwriter and issuer. (*EBC I v Goldman, Sachs,* 5 NY3d at 27 [Read, J., dissenting in part, and citing a 20-page documentation of this "well-understood" relationship in *United States v Morgan,* 118 F Supp 621, 635-655 (SD NY 1953)].)

Indeed, New York courts and jurisdictions applying New York law have long recognized the nonfiduciary nature of the underwriter-issuer relationship. (*See Blue Grass Partners v Bruns, Nordeman, Rea & Co.,* 75 AD2d 791, 791 [1st Dept 1980] [affirming lower court's finding that an underwriting contract does not create a fiduciary duty between the underwriter and the issuer]; *Breakaway Solutions, Inc. v Morgan Stanley & Co. Inc.,* 2004 WL 1949300, *13, 2004 Del Ch LEXIS 125, *52 [with certain exceptions, positions of underwriter and issuer are adverse].)

In fact, not only is a fiduciary aspect absent from the majority of underwriting relationships, such relationships are better characterized as adversarial since the statutorily-imposed duty of underwriters is to investors. Pursuant to the Securities Act of 1933, it is the underwriter's responsibility to prepare a registration statement providing full and adequate information to investors concerning the issuing company and the distribution of the securities. (*See* 15 USC § 77g [a] [providing, in part, that any registration statement shall contain information and documents "necessary or appropriate in the public interest or for the protection of investors"].)

In this case, EBG, as underwriter's due diligence counsel, was the law firm charged with the task of uncovering such documents and information about WellCare and reporting it to the underwriter. On the basis of the reporting, underwriters like Morgan Stanley then make the appropriate disclosures in the offering materials, or may decide the offering is not feasible. To the extent that the information and documents may be unfavorable to the issuer, a fiduciary obligation would almost certainly create a conflict with the underwriter's duty to potential investors.

Thus, given that no fiduciary duty was owed by Morgan Stanley to WellCare, none may be imputed to EBG, Morgan's due diligence counsel, whether EBG is described as counsel, "agent" or even underwriter's investigator.

In any event, as the plaintiff asserts, the creation of a fiduciary duty from underwriter's counsel to the issuer of securities makes no sense under the federal securities laws. Citing to section 11 of the Securities Act, codified as 15 USC § 77k, the plaintiff asserts that the statute allows an underwriter to assert a defense against liability for material misstatements in a registration statement if it performed due diligence. No such due diligence defense is available to the issuer. Consequently, as the plaintiff contends, there is "no conceivable basis for any conclusion that the due diligence is being performed for the issuer's benefit."

Finally, the plaintiff asserts that no confidentiality obligation appertains to the information gathered by EBG from WellCare since it was provided for the purpose of preparing public documents, the registration statement and the IPO prospectus, and that such communications are not confidential. (*See In re John Doe Corp.*, 675 F2d 482, 489 [2d Cir 1982] [confidentiality privilege lost after selective disclosure to underwriter's counsel for beneficial purpose, and not for purpose of legal advice].)

The defendants argue that not all of the information gathered was actually published in the documents connected with the IPO. Nevertheless, this Court's decision to deny disqualification in this case is entirely consistent with prior rulings of this Court. (*See Cutner & Assoc. v Kanbar*, 300 AD2d 157 [2002] [confidential information was not received under circumstances that gave a party the right to believe that the attorneys would respect the confidences].)

The defendants' alternative argument that, while there was no formal attorney-client relationship between EBG and WellCare, there, nevertheless, existed "sufficient indicia" of an attorney-client relationship to justify disqualification, is also without merit. Such cases are usually limited to circumstances where the nonclient, in this case WellCare, shares with the actual client, in this case Morgan Stanley, a joint interest that is being advanced on both the client and nonclient's behalf. (*See Flores v Willard J. Price Assoc., LLC*, 20 AD3d 343 [1st Dept 2005]; *but cf. Glueck v Jonathan Logan, Inc.*, 653 F2d 746, 748-749 [2d Cir 1981].) In this case, such jointly-held interest could only be premised on, or arise out of an existing fiduciary relationship which for all the foregoing reasons did not exist here.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.H.O.), entered on or about Febru-

ary 24, 2005, granting defendants' motion to disqualify plaintiff's original litigation counsel, Epstein Becker & Green, should be reversed, on the law, without costs, and the motion denied.

ANDRIAS, J.P. (dissenting). Because the confidential information obtained by plaintiff's counsel Epstein Becker & Green, P.C. (EBG) from defendant WellCare Health Plans, Inc. in the course of its prior due diligence work for Morgan Stanley may be reasonably perceived as placing such confidences in jeopardy of disclosure to plaintiff, I respectfully dissent and would affirm.

It is undisputed that, in connection with its initial public offering in late 2003, WellCare made extensive due diligence disclosure to the offering's underwriter, Morgan Stanley, through Morgan Stanley's then counsel EBG. Only months later, EBG was retained by plaintiff to prosecute this litigation against WellCare and defendant thereafter moved for and obtained the presently appealed order disqualifying EBG from acting as plaintiff's counsel.

It is well settled that the disqualification of an attorney is a matter that rests within the sound discretion of the court (*see Flores v Willard J. Price Assoc., LLC*, 20 AD3d 343, 344 [2005]). EBG's disqualification was proper since it obtained confidential information in the due diligence process within the context of a fiduciary relationship (*see Greene v Greene*, 47 NY2d 447, 453 [1979]) and that information is substantially related to the issues presented in the instant litigation. A fiduciary relationship may exist between an underwriter and an offeror of securities (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11 [2005]), and the motion court correctly found that such a relationship did exist between Morgan Stanley and WellCare, at least to the extent that Morgan Stanley was bound to preserve from adverse use against WellCare in other contexts confidential information elicited from it to facilitate the underwriter's due diligence. This duty was properly imputed to EBG in its capacity as Morgan Stanley's counsel.

While recognizing that in certain instances, even where no formal attorney-client relationship exists, a fiduciary obligation has been sufficient to warrant attorney disqualification, the majority, relying for the most part on *EBC I, Inc. v Goldman, Sachs & Co.* (*supra*), feels that no fiduciary relationship existed between Morgan Stanley and WellCare and so none may be imputed to Morgan Stanley's attorney. As aptly noted by the

motion court, the crux of disqualification is not the attorney-client relationship itself, but the fiduciary relationship that results from it. Whether or not Morgan Stanley, as underwriter, was a fiduciary in the limited sense that Goldman Sachs was found to be in *EBC I, Inc. v Goldman, Sachs & Co. (supra* at 21-22 ["(T)he fiduciary duty we recognize is limited to the underwriter's role as advisor. We do not suggest that underwriters are fiduciaries when they are engaged in activities other than rendering expert advice"]) does not warrant a different result. In *EBC I*, the Court merely held that the parties had created their own relationship of higher trust which required Goldman Sachs to deal honestly with its client and disclose its conflict of interest (*id.* at 22.)

Here, Morgan Stanley in its role as underwriter undertook as part of its relationship with WellCare to conduct the due diligence work necessary for the public offering of WellCare stock it was underwriting and retained EBG as its agent for that purpose. In that role, EBG obtained "secret" information from WellCare within the meaning of Code of Professional Responsibility DR 4-101 (22 NYCRR 1200.19), to which it would not otherwise have been privy. Thus, even if it was not a fiduciary as found in the context of *EBC I*, at the very least, EBG owed WellCare a fiduciary or special obligation not to disclose to anyone other than Morgan Stanley the "secret" information obtained by it in the course of rendering professional services to Morgan Stanley, so that Morgan Stanley could use it for the purposes for which EBG was retained.

It is undisputed that the confidential information turned over by WellCare to EBG in the course of, and to advance the purpose of, the encompassing confidential relationship included employee policies, retention and recruitment documents, litigation strategy, and business and competitive analyses directly relevant to the unfair competition claims now brought by plaintiff against WellCare. While EBG urges that the disqualification of the entire firm is unnecessary to protect WellCare against any conflict that the lawyers who worked on the WellCare offering may have, in view of the circumstance that EBG has made no attempt to screen those lawyers from the lawyers working on the present case, it was proper to impute their conflict to the entire firm (*see e.g. Panebianco v First Unum Life Ins. Co.*, 2005 WL 975835, *3, 2005 US Dist LEXIS 7314, *8 [SD NY, Apr. 27, 2005, 04 Civ 9331]).

SAXE and GONZALEZ, JJ., concur with CATTERSON, J.; ANDRIAS, J.P., and NARDELLI, J., dissent in a separate opinion by ANDRIAS, J.P.

Order, Supreme Court, New York County, entered on or about February 24, 2005, reversed, on the law, without costs, and the motion to disqualify plaintiff's original litigation counsel denied.