**Maureen REGAN, Plaintiff,**

v.

**Paula W. CONWAY, Defendant.**

**No. CV 07–3207 (ADS)(ARL).**

United States District Court,
E.D. New York.

March 2, 2011.

**402**

Mark S. Frey, Esq., NY, for Plaintiff.

Scott Michael Kessler, Esq., Elissa Paulette Fudim, Esq., of Counsel, Akerman Senterfitt, LLP, New York, NY, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case has an interesting and somewhat busy litigation history which the Court will now attempt to trace.

### I. Background

It all started with the commencement of this lawsuit on August 3, 2007 by Maureen Regan ("plaintiff" or "Maureen" or "Regan") against Paula Conway ("defendant" or "Paula" or "Conway") and John Conway ("John"). The complaint alleged eight causes of action arising from Maureen and Paula's efforts to develop and market the Beauty Buyble, a book chronicling the best value in women's beauty products. On September 20, 2007, the defendants filed an answer asserting affirmative defenses and eight wide-ranging counterclaims.

Maureen is an author and the owner of the Regan Agency, a literary agency. Paula is a publicist and a journalist who has written on the subject of travel, lifestyle and beauty publications. In April 2004, Paula and Maureen entered into an Agency Agreement. Under the terms of this agreement Paula appointed Maureen as her sole and exclusive agent with regard to Paula's next three books. The Agency Agreement also provided that Paula was to pay Maureen a fifteen percent commission on the gross proceeds that Paula received as a result of the sale of the books covered by the Agreement.

On October 28, 2004, Paula and Maureen entered into a second agreement, referred to as the Collaborative Agreement. The purpose of this agreement was to create

and market the Beauty Buyble and another book. Paula was to be the primary author and Maureen was responsible for editing and marketing the book. Paula and Maureen agreed that "all revenue, after expenses, will be divided evenly (fifteen percent) among the Parties."

On May 4, 2005, Paula and Maureen also entered into a Publishing Agreement with HarperCollins Publishing ("HarperCollins") for the purpose of publishing and distributing the Beauty Buyble. The Publishing Agreement defines both Paula and Maureen as the author of the Beauty Buyble and provides that all payments due to the author shall be allocated: 50% to Paula and 50% to Maureen, with all payment made to the Regan Agency. HarperCollins agreed to pay $25,000 to the author with half due upon execution of the contract and the remaining half due upon acceptance of the final manuscript.

As to the royalty checks, in May of 2005, Maureen received two checks from HarperCollins, payable to the Regan Agency in the total amount of $12,500. Paula had requested that Maureen not deduct an agent's fee from the first advance in light of her family's financial woes. On June 4, 2005, Maureen forwarded to Paula a check for $6,250, representing Paula's share of the first advance on royalties. Maureen did not deduct an agency fee from the first royalty check.

Although the precipitating cause is not clear to the Court, the parties' relationship had soured by June 2006. Maureen had written several damaging e-mails concerning Paula. Also, on April 7, 2006 the Conways formed Beauty Buyble LLC without Maureen's knowledge and had the copyright to the Beauty Buyble logo assigned to that entity. Maureen also alleged that on April 19, 2007, Paula filed an application in her name to register the Beauty Buyble trademark with the United States Patent and Trademark Office ("PTO").

On October 20, 2006, HarperCollins sent to the Regan Agency the second installment of the advance by issuing two separate checks for $6,250 each. Maureen deposited both checks in the Regan Agency account and sent Paula a check for $3,775; deducting her 15% commission on both installments and several other deductions. These deductions were disputed by Paula.

On April 1, 2007, HarperCollins sent two separate royalty checks to the Regan Agency: one for Maureen and the other for Paula, each in the amount of $26,908.87. It is undisputed that Maureen never forwarded the check to Paula. The funds have remained in an interest bearing account during the pendency of the parties dispute.

## II.  *The Court's Prior Decision of September 30, 2009*

The prior decision of September 30, 2009 resolved motions by Paula and then defendant John Conway for summary judgment dismissing the complaint and seeking judgment on all but one of their eight counterclaims. In this 28 page September 30, 2009 decision, the Court made the following rulings:

(1) The Collaborative Agreement of October 28, 2004 superceded the Agency Agreement of April 2004. As a result, the agent's fee provision in the Agency Agreement was also superceded. Therefore, the Court ruled that Maureen breached the Collaborative Agreement when, in October 2006, she deducted an Agent's fee from the second advance and, in April 2007, when she withheld Paula's $26,908.87 royalty check. This Court ruled that Paula was entitled to summary judgment on these two violations.

(2) With regard to Maureen's assertion that, prior to Maureen's breach, Paula vio-

lated the covenant of good faith and fair dealing implicit in the Collaborative Agreement, the Court ruled as follows:

> "Nevertheless, Maureen appears to contend that, prior to her breach, Paula breached the covenant of good faith and fair dealing implied in the Collaborative Agreement by refusing to cooperate with her on the Beauty Buyble. The Court finds that there is evidence in the record from which a jury could conclude that, prior to Maureen's material breach of the contract, Paula was not acting in good faith in carrying out *her* obligations under the Collaborative Agreement. Accordingly, Paula's motion for summary judgment dismissing Maureen's eighth cause of action is denied."

(3) As to Maureen's request for declaratory relief, "to the extent that Maureen is seeking a declaration that she is entitled to copyright the concept of a book dealing with women's beauty products, that request is denied."

(4) Maureen's request for a declaratory judgment that she is entitled to the "sole and exclusive" rights to the Beauty Buyble domain name and trademark dates was also denied.

(5) The complaint was dismissed as against the co-defendant John Conway.

### III.  *The Verdict*

In a unanimous verdict rendered on February 1, 2010, the jury determined:

That prior to October 20, 2006, the defendant Paula Conway breached the implied covenant of good faith in carrying out her obligations under the Collaborative Agreement, and awarded damages of $40,000 to the plaintiff Maureen Regan.

As to the counterclaim by the defendant Paula Conway against the plaintiff Maureen Regan based on a breach of fiduciary duty, the jury found in favor of the defendant and awarded her damages of $65,000.

### IV.  *Post–Verdict Motions*

The defendant Paula Conway moved, pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 50(6) for an order for judgment as a matter of law striking the jury verdict as to the defendant's liability on the plaintiff's claim for breach of the covenant of good faith and fair dealing, and, in the alternative, striking the jury's award of damages of $40,000 to the plaintiff.

The plaintiff moved, pursuant to Fed. R.Civ.P. 50 to reverse the jury verdict in favor of the defendant on the counterclaim for breach of fiduciary duty and to strike the jury's award of damages in the amount of $65,000 in favor of the defendant.

In addition, the plaintiff also moved, post-verdict for (1) a declaratory judgment, (2) injunctive relief, and (3) legal fees. The defendant also moved for legal fees.

On May 10, 2010, in a far ranging 51 page decision, the Court decided all the post-verdict motions, as follows:

(1) The motion by the defendant Paula Conway, pursuant to Fed.R.Civ.P. 50(b), for judgment as a matter of law with regard to the liability verdict in favor of the plaintiff Maureen Regan based on a breach of the covenant of good faith and fair dealing, was denied.

(2) The motion by the defendant Paula Conway, pursuant to Fed.R.Civ.P. 50(b), for an order striking the jury's award of $40,000 in damages to the plaintiff, was denied.

(3) The motion by the plaintiff Maureen Regan, pursuant to Fed.R.Civ.P. 50(b), for a judgment as a matter of law with regard to the verdict in favor of the defendant on the counterclaim based on a breach of fiduciary duty, was denied.

(4) The request by the plaintiff Maureen Regan for a declaratory judgment was denied in all respects.

(5) The request by the plaintiff Maureen Regan for a permanent injunction was denied in all respects.

(6) The request by the defendant Paula Conway for attorneys' fees was denied.

(7) The request by the plaintiff Maureen Regan for attorneys' fees and costs was granted.

## V. *The Defendant's Motion for Reconsideration*

By notice of motion for reconsideration bolstered by a memorandum of law, the defendant Paula W. Conway moved for reconsideration "of that portion of the Post–Trial Order which granted the claim of plaintiff's counterclaim defendant Maureen Regan for attorneys' fees and court costs." Upon reconsideration, the defendant further moved for an order "denying plaintiff's application for attorneys' fees and court costs."

At this point a review of the terms of the Collaborative Agreement with regard to attorneys' fees, is in order. The Collaborative Agreement at paragraph 16 is the basis for the plaintiff's request for legal fees. This paragraph reads as follows:

16.   Each Party will indemnify and hold the other and the Publisher harmless from any loss, liability, expense or damage, including, without limitation, court costs and reasonable attorneys' fees, insofar as such loss, liability, expense or damage arises out of, is based upon or is in respect of a breach of our respective representations and warranties made pursuant to Paragraphs 13 and 14 above.

In the May 10, 2010 opinion, the Court stated that: "This paragraph (16) clearly states that if a party breaches the representations and warranties made in paragraphs 13 and 14 of the Collaborative Agreement, such party will indemnify the harmed party for "court costs" and "reasonable attorneys' fees". Paragraphs 13 and 14 read as follows:

13.   The Parties hereby represent, warrant and covenant to the other that:

a.   each shall each personally perform all of the respective obligations hereunder;

b.   each Party has not and will not do any act or thing which conflicts or may conflict with either this Agreement or any Publishing Contract;

c.   each party has not and will not impair the performance of the other Party's respective obligations or impair the other's or the Publisher's rights under either the Agreement or the Publishing Contract;

d.   they are the owners of all rights granted to the other under this Agreement; and

e.   each Party has the full power and authority to enter into this Agreement.

14.   Each Party hereby represents, warrants and covenants to the other that:

a.   the information each has provided in their discussions is free of any lien, claim or encumbrance;

b.   the Work does not infringe on any copyright or violate any other right of any person or party whatsoever;

c.   the Work does not contain any defamatory, libelous or unlawful matter including invasions of the right of privacy or publicity of another; and

d.   the Work is true or based on reasonable research for accuracy.

As set forth in the May 10, 2010 decision, the Court then determined that the defendant is responsible for the payment of Maureen's attorneys' fees and costs, as follows:

In paragraph 13(b) of the Collaborative Agreement, Conway represented, warranted and covenanted that she would "not do any act or thing which conflicts or may conflict with either this [Collaborative] Agreement or any Publishing Contract." Also, in paragraph 13(c) of the Collaborative Agreement, Conway represented, warranted and covenanted that she would "not impair the performance of [Maureen's] respective obligations or impair [Maureen's] or the Publisher's rights under either the [Collaborative] Agreement or the Publishing Contract."

The Court finds that the evidence at the trial clearly demonstrated that Conway engaged in certain activities that conflicted with her obligations under the terms of the Collaborative Agreement. In this Agreement, Conway agreed to collaborate in good faith and share equally all "copyrights ... trademarks, service marks and all good will associated therewith and the rights to exploit the work in all languages and mall media throughout the world ..." (Pltf's Ex. 4 ¶ 5).

The evidence at the trial established that Conway failed to collaborate in good faith and share equally all copyrights and trademarks. On May 8, 2006 when Sephora Co. requested that Regan and Conway fill out an application to become an affiliate, Conway wrote back, "[p]lease disregard anything Maureen has already submitted regarding the affiliate program with Beauty Buyble.com. To be technically correct I have to sign for Beauty Buyble.com because the asset has not been transferred to our operating unit yet." Conway wrote this on May 9, 2006, almost two years after entering the Collaborative Agreement on October 28, 2004. Further, in this regard, as to impairing Regan's rights, Conway wrote an e-mail to Sephora on August 16, 2006, entitled "Coupons for the Beauty Buyble," stating, in part, "[a]ddditionally, and even more importantly, I will be doing the next project alone. My PR will be driven to a different website with new branding ..." In the same e-mail Conway referred to "my publicity efforts" and "my new website ... over which I have complete control." ... and "This is just the beginning of something very big." (Pltf's Ex. 57).

In addition, Paula sought to market and exploit the Beauty Jungle in disregard of the publisher's rights and signed a contract for a new book in complete disregard of the rights of HarperCollins. (See Pltf's Ex. 8 ¶ 2(d), 10(b), 12 and Tr. at 622, lines 23–623). Even more compelling, is the evidence that Paula filed for copyright protection in her own name; applied for a trademark in her own name; and told Maureen "Take 20 percent and get lost. This is mine." (Tr. at 142). Paula also told Maureen that "I own the website and you and I do not have an Operating Agreement." (Pltf's Ex. 51). This would certainly indicate that Paula impaired the performance of Maureen with regard to Maureen's rights under the Collaborative Agreement.

\*   \*   \*   \*   \*   \*

Accordingly, the Court grants the request of the plaintiff Maureen Regan, pursuant to ¶ 16 of the Collaborative Agreement, to recover her reasonable attorneys fees and court costs from the defendant Paula Conway. The determination as to the amount of such attor-

neys' fees and costs will be discussed in the Conclusion portion of this decision.

*Id.* at 47 to 49.

The thrust of the defendant's motion for reconsideration is that, while the jury found that Paula breached the Collaborative Agreement before Maureen made her unauthorized deductions, the jury did not find that Paula breached the Collaborative Agreement prior to Regan's breach of her fiduciary duty arising under the Collaborative Agreement. The defendant contends that "it is impossible to tell from the jury's verdict who the jury believed first committed a breach of the Collaborative Agreement . . ."

In further support of this contention, the defendant points to the Court's prior September 30, 2009 Summary Judgment Order in which the Court stated:

> Between June of 2006 and August of 2006, Maureen engaged in a pattern of conduct that effectively breached the Agency Agreement. During this period, Maureen made a number of disparaging remarks about Paula to her sister Judith and various HarperCollins employees. Maureen sought to exclude Paula from marketing events related to the Beauty Buyble and even tried to convince the publisher to change the order of the author credits on the book. Moreover, Maureen admits that she refused to apprise Paula of various suitable book opportunities.

*Id.* at 19.

In addition, the defendant reviewed other evidence adduced at the trial that she contends constitutes a violation of the attorney indemnification clause:

> Defendant presented the jury with ample evidence that as early as May 13, 2006, Regan sought to change the author credits on *The Beauty Buyble* behind Conway's back (Trial Transcript 292–

293; Trial Exhibit "K"). The jury also heard evidence that Regan sought to exclude Conway for publicity efforts for *The Beauty Buyble* (Trial Transcript 285–286; Trial Exhibits "C", "J"), and repeatedly ridiculed Conway, accusing her of unfounded conduct, to Defendant's colleagues at HarperCollins (Trial Transcript 249–263, 270–281, Trial Exhibits A, C, D, E, F, G, H). Based on this evidence, the jury found that Plaintiff breached her fiduciary duty. Verdict Sheet at 2. Regan's breach of fiduciary duty was not only a tort, but a breach of the Collaborative Agreement itself, which required Regan to "carry out those activities typically performed by a book or *an author's agent* ". Trial Exhibit 4 at ¶ 3.

(Dft's Memorandum of Law In Support of Reconsideration at 3).

So that the basis for this motion for reconsideration by the defendant with regard to the Court's prior grant of attorneys' fees and costs to the plaintiff is that "the jury never made a determination as to whether Conway first breached the implied covenant of good faith and fair dealing or whether Regan first breached her fiduciary duty under the Collaborative Agreement." (Dft's Memorandum at 4). Further, the defendant contends that the Court's deduction that Conway breached the Collaborative Agreement prior to Regan, based on the fact that the jury determined that Conway breached the Collaborative Agreement prior to Regan's unauthorized deduction "improperly assumes that Regan's unauthorized deduction was the *only* conduct which could serve as breach of Regan's fiduciary duty under the Collaborative Agreement." The defendant concludes by asserting that the jury awarded Conway $40,000 for conduct in addition to the withholding of Conway's royalties, which was "wrongful breaching conduct (by Regan) other than

the unauthorized deduction." (Dft's Memorandum at 10.)

In opposition to the defendant's motion for reconsideration, the plaintiff Maureen Regan contends that the motion does not meet the standard for reconsideration. In this regard the plaintiff asserts that the motion for reconsideration "does not cite to any intervening change in controlling law or point to any part of the record that the Court overlooked which might reasonably be expected to alter the outcome, nor does defendant demonstrate that the Court made a clear error or committed a manifest injustice." (Pltf's Memorandum in Opposition at 2.)

In particular, the plaintiff contends that in a February 16, 2010 letter motion, the defendant had previously raised the issue that there was no finding as to who breached the Collaborative Agreement first. This issue was raised by defendant as to the plaintiff's declaratory judgment request but not with respect to the legal fees issue. In addition, the plaintiff contends that the cause of action for breach of fiduciary duty by Regan was a tort and did not constitute a breach of the Collaborative Agreement. In this regard, counsel for the plaintiff points to the question on the Verdict Sheet, which required the jury to determine if "... the plaintiff Maureen Regan violated her fiduciary duty to the defendant in carrying out her obligations as her agent, under the various agreements involved in this case." Therefore, according to this reasoning, the plaintiff asserted that there was no breach of paragraphs 13 or 14 of the Collaborative Agreement by Maureen Regan.

In this regard, the plaintiff asserts that the Verdict Sheet did not ask the jury to determine if as a result of Paula's various allegations Maureen breached the Collaborative Agreement—which contained the attorneys' fees clause—but correctly asked the jury to determine if Maureen breached her fiduciary duty as an *agent*, "under the various agreements involved in this case." In sum, the plaintiff asserts that this tort of breach of fiduciary duty was independent of and not subject to the attorneys' fee provision in the Collaborative Agreement.

In reply to the plaintiff's opposition to her motion for reconsideration, Conway asserts that the plaintiff's breach of fiduciary duty was both a tort and a breach of contract. Again, the defendant repeats that jury never determined who first breached the Collaborative Agreement and "this Court cannot fill in the gap by making the factual determination on its own." (Dft's Reply Memorandum at 8).

## VI. *Discussion*

### A. *The Standards*

■ The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *See Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 132 (2d Cir.1999) (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983)). A motion for reconsideration, also known as reargument, is governed by Federal Rule of Civil Procedure 59(e) ("Fed.R.Civ.P.") and Local Rule 6.3. *See Hertzner v. Henderson*, 292 F.3d 302, 303 (2d Cir.2002); *Yurman Design Inc. v. Shieler Trading Corp.*, No. 99 Civ. 9307, 2003 U.S. Dist. LEXIS 15070, at *2 (S.D.N.Y. Aug. 18, 2003). Rule 59(e) covers a broad range of motions including for reconsideration. 11 Wright, *Federal Practice and Procedure* § 2810.1 at 122.73 (2d 2010).

■ The standards that are set forth in both Fed.R.Civ.P. 59(e) and Local Rule 6.3 are identical. *See Alexander v. The Turner Corp.*, No. 00 Civ. 4677, 2001 WL 1098010, at *1, 2001 U.S. Dist. LEXIS 14559, at *1 (S.D.N.Y. Sept. 10, 2001). "A

motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." *In re Worldcom, Inc. Sec. Litig.*, 308 F.Supp.2d 214, 224 (S.D.N.Y. 2004); *Colodney v. Continuum Health Partners, Inc.*, No. 03–7276, 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004); *see also In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir.2003); E.D.N.Y. Local Civil Rule 6.3. Reconsideration may also be granted to "correct a clear error or prevent manifest injustice." *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1287 (2d Cir.1994); *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.1983).

■ To preserve scarce judicial resources and to avoid piecemeal litigation, a motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temps., Inc.*, No 99 Civ. 6098, 2001 WL 286771, at *1, 2001 U.S. Dist. LEXIS 3165, at *1 (S.D.N.Y. Mar. 22, 2001); *see also Shrader v. CSX Trasp. Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (stating that reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided"); *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (stating that a Rule 6.3 motion is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"). In addition, "a party in its motion for reargument may not advance new facts, issues or arguments not previously presented to the court." *O'Brien v. Bd. of Educ. of Deer Park Union Free Sch. Dist.*, 127 F.Supp.2d 342, 345 (E.D.N.Y.2001).

**B. *Manifest Injustice in the Award of Attorneys' Fees?***

Apparently, the defendant is proceeding with the motion for reconsideration under the "manifest injustice" phase of the rule permitting such a motion. The thrust of this motion was stated succinctly: "While the jury found that Conway breached the Collaborative Agreement before Regan made her unauthorized deductions, the jury did *not* find that Conway breached the Collaborative Agreement prior to Regan's breach of the fiduciary duty arising under the Collaborative Agreement ... (and) the Court cannot make its own factual determination on questions never presented to the jury." (Dft's Memorandum In support of Motion for Reconsideration at 2 and 4.) In response, the plaintiff's counsel contends that the defendant's claim for breach of fiduciary duty arose from the contract between the parties, but "nevertheless was one separate and distinct and independent of the contract itself." (Pltf's Memorandum in Opposition at 6.) Therefore, asserts the plaintiff, it was not relevant as to which party first breached her duty.

■ In the resolution of this motion, the Court must determine if there was "manifest injustice" in the Court's ruling awarding counsel fees to Regan's attorney. To resolve this issue, the Court must again review the contract awarding the attorneys' fees and the nature of the breach of fiduciary duty cause of action. The Collaborative Agreement at clause 16 states, in substance, that each of the parties, Regan and Conway, will indemnify the other party from any loss or liability, without limitation, for court costs and reasonable attorneys' fees, "insofar as such loss, liability, expense or damage arises out of, is based upon or is in respect of a breach of our respective representations and warranties

made pursuant to paragraphs 13 and 14 above." The key sections of paragraphs 13 and 14, insofar as any actions by Maureen are involved, are as follows:

b. each Party has not and will not do any act or thing which conflicts or may conflict with either this Agreement or any Publishing Contract;

c. each Party has not and will not impair the performance of the other Party's respective obligations or impair the other's or the Publisher's rights under either the Agreement or the Publishing Contract;

Query, could the breach of fiduciary duty by Maureen Regan be found to be a violation of these contractual provisions? The answer to this question requires a closer look at the breach of fiduciary duty cause of action. The plaintiff asserts that it a tortious cause of action and thus, cannot be used to find a violation of the related contractual terms. Not so, says the defendant, who contends that the plaintiff's breach of fiduciary duty was *both* a tort and a breach of contract.

### 1. *Breach of Fiduciary Duty*

■ Generally, to prove a claim for breach of fiduciary duty, the claimant must prove (1) the existence of a fiduciary relationship between the parties and (2) a breach of that fiduciary duty. *See CFSC Capital Corp. XXVII v. W.J. Bachman Mechanical Sheet Metal Co., Inc.*, 247 A.D.2d 502, 669 N.Y.S.2d 329 (2d Dep't 1998). Some cases have gone further in setting forth the elements of a breach of fiduciary duty cause of action. In *Kurtzman v. Bergstol*, 40 A.D.3d 588, 835 N.Y.S.2d 644, 646 (2d Dept.2007), the Court held that "to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." (*See Ozelkan v. Tyree Bros. Envtl. Servs. Inc.*, 29 A.D.3d 877, 879, 815 N.Y.S.2d 265, 267 (2d Dep't 2006); *see also Fitzpatrick House III, L.L.C. v. Neighborhood Youth & Family Services*, 55 A.D.3d 664, 664, 868 N.Y.S.2d 212, 213 (2d Dep't 2008)).

Here, however, the Court narrowed the cause of action for the jury. In the charge, the Court advised the jury that Regan was the agent of Conway, the principal. Also, among other contentions, the Court advised the jury of the contention that Regan breached her fiduciary duty as an agent by failing to properly disburse certain of the advance monies and royalties.

As stated above, the basis for this motion for reconsideration is that the jury never determined that Conway breached the Collaborative Agreement prior to Regan's breach of her fiduciary duty under that agreement. The Court finds that this factual determination was not required in order to make the determination as to attorneys' fees. The Court has already determined that Conway was liable for attorneys' fees under clauses 13 and 16 of the Collaborative Agreement. The Court found that Conway perpetrated acts that conflicted with the terms of the agreement and impaired Regan's performance under the agreement. On the other hand, the Court finds that the breach of fiduciary duty by Regan was a tortious activity arising from the contract, but was separate and apart from its terms.

■ A cause of action for breach of fiduciary duty has been sometimes referred to as a "commercial tort." *See* Robert A. Kirtcher & Benjamin W. Bronston, *Business Torts Litigation*, Ch. II (ABA, 1992). More relevant to the facts in this case, is the rule that "a cause of action for breach of fiduciary duty which is merely

duplicative of a breach of contract claim cannot stand." *William Kaufman Org. Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173, 703 N.Y.S.2d 439, 442 (1st Dep't 2000); *see also (Cal Distrib. v. Cadbury Schweppes Ams. Bevs. Inc.*, No. 06 Civ. 0496, 2007 WL 54534, at *9, 2007 U.S. Dist. LEXIS 854, at *78 (S.D.N.Y. Jan. 5, 2007) (citing *William Kaufman Organization, Ltd. v. Graham & James LLP*, 269 A.D.2d at 173, 703 N.Y.S.2d at 442)). *Facella v. Federation of Jewish Philanthropies of N.Y., Inc.*, No. 98 Civ. 3146, 2004 WL 1700616, at *6 (S.D.N.Y. July 30, 2004). In this regard, fiduciary liability is not solely based upon the agreement between the parties, but it can involve the essential relationship between the parties. Even if the parties are involved in a contractual relationship, there can be a separate and distinct fiduciary relationship. A contractual relationship and a fiduciary relationship can co-exist at the same time and between the same parties. *See e.g., Michelson v. Hamada*, 29 Cal.App.4th 1566, 1580, 36 Cal.Rptr.2d 343 (Cal.Ct.App. 1994).

### 2. *No Manifest Injustice*

This motion for reconsideration by the defendant is really based on one issue, namely, that there has been no finding by the jury as to who breached the Collaborative Agreement first. In effect, the defendant is arguing that the plaintiff's breach of her fiduciary duty, as found by the jury, was not only a tort, but was simultaneously a breach of the Collaborative Agreement as well. The Court disagrees.

While the defendant's claim based on a breach of fiduciary duty arose from the contract between the parties, the tortious claim was separate and distinct and independent of the contract itself. As stated in *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 799 N.Y.S.2d 170, 175, 832 N.E.2d 26 (2005):

> However, it is fundamental that fiduciary "liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation" (Restatement [Second] of Torts § 874, Comment b).

*See also HF Mgmt. Services LLC v. Pistone*, 34 A.D.3d 82, 818 N.Y.S.2d 40, 42 (1st Dep't 2006) ("The fiduciary relationship alleged by the parties ... was 'beyond that which arises from the underwriting agreement alone.'").

In this case, while the defendant's claim for a breach of fiduciary duty by the plaintiff did arise from the contracts between them, it was a separate and independent tortious cause, based on the elements of that cause of action. As stated by the New York Court of Appeals in *Clark–Fitzpatrick, Inc. v. Long Island Railroad Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), "The legal deity must spring from circumstances extraneous to, and not constituting elements of the contract, although it may be connected with and dependent upon the contract." This rule was well explained in a case involving the tort of negligence arising from a contract between the parties. In *Givoldi Inc. v. United Parcel Service*, 286 A.D.2d 220, 729 N.Y.S.2d 25, 27 (1st Dept. 2001) the Court stated:

> Plaintiff's cause of action sounding in negligence must also fail. It is settled that a claim arising out of an alleged breach of contract, here, the shipping agreement, may not be converted into a tort action absent the violation of a legal duty independent of that created in the contract (*Rothberg v. Reichelt*, 270 A.D.2d 760, 705 N.Y.S.2d 115; *Roklina v. Skidmore College*, 268 A.D.2d 765, 702 N.Y.S.2d 161, *lv. denied* 95 N.Y.2d 758,

713 N.Y.S.2d 522, 735 N.E.2d 1287). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." (*Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190).

Reverting to the defendant's argument in support of this motion for reconsideration, it was not relevant whether Maureen breached her fiduciary duty prior to Paula's breach of her contractual obligations. The defendant's breach of fiduciary duty cause of action—in the nature of a tort claim based on the contracts—was independent of the breach of contract claims; and did not implicate the legal fee provision of the Collaborative Agreement. Accordingly, there was no "manifest injustice" in the Court's ruling awarding attorneys' fees to the plaintiff.

The defendant's motion for reconsideration pursuant to Local Civil Rule 6.3, and upon reconsideration to deny the request of the plaintiff Maureen Regan for attorneys' fees and court costs, is denied in all respects.

**SO ORDERED.**